Michael E. MARSANO, Petitioner-Appellant,

v.

Hon. Melvin LAIRD, Secretary of Defense; Hon. Stanley R. Resor, Secretary of the Army; Maj. Leon Grant, Commanding Officer Armed Forces Examining and Entrance Station, Fort Hamilton, Brooklyn, New York; Lt. Gen. Lewis B. Hershey, National Director of Selective Service; and Local Board No. 3, Great Neck, New York, Respondents-Appellees.

No. 643, Docket 33519.

United States Court of Appeals Second Circuit.

Argued May 9, 1969.

Decided June 16, 1969.

Marvin M. Karpatkin, New York City, (Michael N. Pollet, and Alan H. Levine,

New York City, on the brief), for petitioner-appellant.

Howard L. Stevens, Asst. U. S. Atty., Brooklyn, N. Y. (Vincent T. McCarthy, U. S. Atty., for Eastern District of New York, Brooklyn, N. Y.), for respondents-appellees.

Before MOORE, FRIENDLY and HAYS, Circuit Judges.

MOORE, Circuit Judge.

The question presented on this appeal is whether a second-year graduate student is entitled by law to be deferred until the end of the academic year after he has received an order to report for induction during that year. Michael Marsano is, and has been since September 1967, a full-time graduate student at Columbia University, New York City, New York. During the 1967–68 academic year he was deferred as a graduate student under Section 6(h) (2) of the Selective Service Act of 1967, but he has never received an undergraduate deferment pursuant to Section 6(h) (1) of such Act. The importance of this distinction will become apparent below.

For the purposes of this appeal, the facts have been stipulated by the parties. Appellant attended Georgetown University, Washington, D. C., from July 1964 until June 1967. During this period he was deferred as a student under subsection 6(h) of the Universal Military Training and Service Act of 1951 (hereinafter, the Act of 1951). He thereafter entered graduate school in September 1967 and was deferred for graduate study in the classification of II-S for one year pursuant to 32 C.F.R. 1622.26(b). Since his field of study was not one which permitted him to be deferred for the duration of his degree program, 32 C.F.R. 1622.26(a), namely, "as necessary to the maintenance of the national health, safety or interest," in June 1968, appellant's graduate deferment expired, pursuant to Selective Service Regulations, 32 C.F.R. 1622.26(b), and he was reclassified I-A, as available for induction. He continued his graduate studies in the fall of 1968 and during his first semester, he received an order to report for induction on November 8, 1968. After he received this order, he made a written request to his local draft board (respondent) for deferment in class I-S, namely, deferment until the end of the 1968–69 academic year. This request was denied, but the reporting date of the order was thereafter postponed until February 6, 1969.

Appellant was subsequently inducted into the United States Army by order of the respondent on February 6, 1969. On the same day, an order to show cause why a writ of habeas corpus should not issue on the ground that appellant was entitled to a I-S classification as a matter of right was signed by Judge Bartels. Argument was heard on February 14, 1969 and on March 20, 1969 a final decision and order were entered denying the requested relief. This appeal followed. A stay was granted by Judge Weinstein, barring respondents from removing appellant from the jurisdiction of the Second Circuit until determination of this expedited appeal.

The statutory scheme of the Selective Service Act of 1967 (the Act of 1967), 50 U.S.C. App. § 451 et seq., enacted on June 30, 1967 is as follows. Paragraph 6(h) (1) of the Act makes student deferments for undergraduates pursuing a full-time course of study compulsory until the baccalaureate degree is received (or until loss of good standing, or age 24, if either occurred earlier). Such students are classifed II-S. This paragraph established an entirely new system of *undergraduate* student deferments. It provided for the first time an absolute right to an undergraduate deferment and coupled this right with certain consequences. The major consequence was that those who received undergraduate deferments were required to spend one year in a "prime age category"—a pool of potential inductees—upon graduation from college, loss of good standing or the attainment of age 24, whichever should occur first. This prime-age group was to be designated by

the President, but has never been implemented.

As to graduate students, by paragraph 6(h) (2) Congress authorized—but did not require—deferment in fields of study "found to be necessary to the maintenance of the national health, safety, or interest." The ultimate determination as to precisely which fields of study are essential was left to the President. He has since exercised this authority, restricting the deferrable categories only to "medicine, dentistry, veterinary medicine, osteopathy or optometry." Persons studying in the designated areas are classified II-S. While Congress contemplated that the universal deferment of graduate students would be eliminated, it was not required to change much of the prior act. In fact, Congress merely expanded and subdivided subsection 6(h) of the 1951 Act. Subsection 6(h) of the 1951 Act applied to study generally and authorized induction of students, graduate and undergraduate, at any time, although in fact considerable liberality prevailed. Thus, changes relating to undergraduates are found in paragraph 6(h) (1) of the 1967 Act. As to graduate students the enactment of old § 6(h) as paragraph 6(h) (2) of the new Act simply changed "study" to "graduate" study.

At the time of the adoption of the new Act, June 30, 1967, students already accepted for graduate school, or then participating in a graduate program, would have been subject to induction before completion of their degree requirements. To ameliorate the harshness of such a result, Congress authorized a transition period where those who had relied on the old system in planning their studies could alter their plans in regard to the new scheme. Consistent with this purpose, regulations were issued pursuant to paragraph 6(h) (2) continuing the old system of deferment for graduate students generally for one additional year. 32 C.F.R. § 1622.-26(b); see footnote 2, infra. Appellant was deferred for his first year of graduate study pursuant to that regulation.

Not to interrupt study needlessly, Congress maintained the prior provision, paragraph 6(i) (2) of the 1951 Act, postponing induction until the end of the academic year for graduate and undergraduate students ordered to report for induction during the school year. Paragraph 6(i) (2) was not repealed or changed by the 1967 Act. Students deferred pursuant to it are classified I-S.

The question presented here is whether appellant is entitled to be deferred under paragraph 6(i) (2) of the 1951 Act. Since this provision was not altered by the Selective Service Act of 1967, a relevant inquiry is: How would appellant have been treated under the prior acts?

Paragraph 6(i) (2) first appeared in a slightly altered form in the Selective Service Act of 1948, ch. 625, 62 Stat. 612 (hereinafter, the 1948 Act) and pursuant to it *all* students inducted during the school year were entitled, as of right, to a statutory I-S postponement. Similarly, paragraph 6(i) (2) of the 1951 Act, ch. 144, 65 Stat. 84–85, continued this privilege, but excluded registrants who had already received a II-S or I-S deferment under the 1948 Act, or a I-S under the 1951 Act. Thus, under both prior acts, appellant would have had an unequivocal right to a I-S deferment. No changes were made by Congress in this specific provision, but respondents contend that appellant has no right to such a deferment.

A reading of paragraph 6(i) (2) makes it apparent that by its express terms Marsano has an explicit statutory right to be deferred until the end of the academic year. Paragraph 6(i) (2) directs that "Any person who while satisfactorily pursuing a full-time course of instruction at a college, university, or similar institution is ordered to report for induction * * * shall, upon the facts being presented to the local board, be deferred (A) until the end of such academic year, or (B) until he ceases satisfactorily to pursue such course of instruction, whichever is the earlier * * *," and thereafter follow a few

exceptions not applicable here. These exceptions relate to registrants who have had a II-S deferment between 1948–51 or who have previously received a I-S classification. Bowen v. Hershey, 410 F.2d 962 (1st Cir.1969); Foley v. Hershey, 409 F.2d 827 (7th Cir.1969); Kaplysh v. Allen, 303 F.Supp. 1007 (N.D. Ohio, 1969).

A final exception to those eligible to receive a I-S under paragraph 6(i) (2) is found in paragraph 6(h) (1). This paragraph provides for mandatory deferment of undergraduates and was designed for the induction of men in a "prime-age category." As one incident of the new system and in order to prevent pyramiding of deferments, undergraduates deferred under paragraph 6(h) (1) thereafter became ineligible for I-S deferments under paragraph 6(i) (2). This proviso in § 6(h) (1) [1] applies on its face only to those who receive undergraduate deferments after June 30, 1967, the date of the new Act, because it bars those being deferred "under the provisions of *this paragraph*" [emphasis supplied] from receiving a I-S. If Congress had intended to exclude from I-S postponement *any* person deferred as a II-S after the effective date of the act, then it clearly would have specified that the bar applied to persons who had received a *student deferment* under this "subsection," rather than under this "paragraph." Additionally, Selective Service has explicitly recognized that paragraph 6(h) (1) has no application to any deferments received prior to June 30, 1967. Local Board Memoranda Nos. 84, 87. Appellant has never received such a deferment, since he graduated from college prior to the enactment of the 1967 Act and his deferment since then has been for *graduate* study pursuant to paragraph 6(h) (2). By its explicit terms this proviso is inapplicable to appellant. Bowen v. Hershey, *supra*; Foley v. Hershey, *supra*; Kaplysh v. Allen, *supra*.

The statutory grant of a I-S deferment in paragraph 6(i) (2) is stated in mandatory rather than discretionary terms. A person fulfilling the requirements of the paragraph has a plain and unqualified right to be deferred until the end of the academic year. Appellant fits precisely within the statutory grant. He is not disqualified by any of the statutory exceptions. No discretion, therefore, has to be exercised by the Board before the I-S can be issued. In short, since appellant received an induction order while he was satisfactorily pursuing a full-time course of instruction at a university, he should have been deferred until completion of the school year "upon the facts being presented to the local board." See Bowen v. Hershey, *supra*; Foley v. Hershey, *supra*; Kaplysh v. Allen, *supra*; and Armendariz v. Hershey, 295 F.Supp. 1351 (W.D.Texas 1969).

However, respondents call attention to the Selective Service Regulations which on their face are more restrictive than the governing statute in the granting of the I-S. In fact, they purport to carve out another exception to the statutory right to a I-S deferment not contained in the Act. Armendariz v. Hershey, 295 F.Supp. at 1354. Section 1622.15(b) (2) of the regulations provides:

In Class I-S shall be placed any registrant who while satisfactorily pursuing a full-time course of instruction at a college, university, or similar institution of learning and during his academic year at such institution is ordered to report for induction, except that no registrant shall be placed in Class I-S under the provisions of this paragraph

(1) who has previously been placed in Class I-S thereunder, or

(2) who has been deferred as a student in Class II-S and has received his baccalaureate degree.

1. "No person who has received a student deferment under the provisions of this paragraph shall thereafter be granted a deferment under this subsection, nor shall any such person be granted a deferment under subsection (i) of this section if he has been awarded a baccalaureate degree * * *."

Under these regulations a full-time student is to receive a I-S if he is ordered to report during the academic year but he is not to be so deferred if he has previously obtained a II-S classification and has received his baccalaureate degree. The exception by its terms is open to the interpretation that would deny the I-S to any graduate student who has *ever* received a II-S deferment, although paragraphs 6(i) (2) and 6(h) (1) do not so limit the right to a I-S. Presumably recognizing that this regulation created a potential conflict with those paragraphs, the Director of Selective Service sought to clarify the regulation by issuing Local Board Memorandum No. 87. The memorandum directs that "Section 1622.15(b) (2) refers to a registrant who has been placed in Class II-S after June 30, 1967 and has a baccalaureate degree."

But even with the restriction, the regulations can still be read to bar a I-S to any graduate student who has received a II-S as a graduate student after June 30, 1967. Yet paragraph 6(i) (2) expressly grants I-S deferments for graduate students so long as they have not received a II-S as an *undergraduate* after June 30, 1967. Thus under the statute the fact that a graduate student obtained a II-S (for graduate study) after the effective date of the Act would not preclude him from thereafter receiving a I-S, whereas under a broad reading of the regulation and the Memorandum he would be so precluded. Thus, either the statute must authorize the President by regulation to further restrict the granting of I-S deferments, or the regulation has to be read more narrowly to avoid conflict with the statute.

■ No statutory provision authorizes the restriction of deferments by ad-

ministrative regulation explicitly granted by paragraph 6(i) (2). The last sentence of § 6(i) (2), which reads "Nothing in this paragraph shall be deemed to preclude the President from providing, by regulations prescribed under subsection (h) of this section, for the deferment * * * of any category or categories of students for such periods of time as he may deem appropriate" would appear to authorize *"longer* deferments to students whose activity with regard to science, medicine, research, or other endeavor renders such longer deferment essential * * *." S.Rep. No. 1268, 80th Cong., 2d Sess., in 1948 U.S.Code Cong.Serv., pp. 1989, 2002. Thus, there is no statutory authority for creating, by regulation, another exception to § 6(i) (2).[2] Since an express statutory right cannot be impaired by administrative action or regulation, Oestereich v. Selective Service System, Local Board No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968), Local Board Memorandum No. 87 and 32 C.F.R. § 1622.15(b) (2) must be read consistently with paragraphs 6(i) (2) and 6(h) (1). That is to say, a registrant becomes ineligible for a I-S deferment only (1) if he has previously received a I-S, or (2) if he has been deferred in Class II-S (a) after June 30, 1967 and (b) *thereafter* has received a baccalaureate degree.

A number of considerations convince us that a literal reading of the statute is exactly what Congress intended. For one thing, Congress primarily changed only the section of the draft law relating to undergraduate deferments, but left unchanged those provisions from the prior act dealing with deferments for graduate study and for completion of the academic year. Since those who receive a II-S under the 1951 Act were eli-

---

**2.** It is clear that Regulation 1622.26(b) was issued under paragraph 6(h) (2), rather than under paragraph 6(i) (2), because: (1) this regulation continued for one more year the system of graduate student deferments in effect under the predecessor of paragraph 6(h) (2); (2) it is authorized by the language of para-

graph 6(h) (2) providing for regulations to govern deferments for "activity in graduate study," whereas paragraph 6(i) (2) does not authorize such a regulation; (3) the regulation applies without regard to receipt of an induction order and paragraph 6(i) (2) provides for deferment only after receipt of such an order.

gible thereafter to receive a I-S postponement, it is clear that by the limited nature of the changes adopted by Congress in the 1967 Act, Congress intended no change in regard to a graduate student's right to be deferred until the end of the academic year.

It is true that the President, by regulation, severely curtailed the categories of graduate students eligible for II-S deferments and authorized registrants as appellant only one further year of such deferment. Reg. 1622.26. But it certainly does not follow that Congress intended to authorize the President to restrict the eligibility of graduate students for I-S postponement under paragraph 6(i) (2) of the Act, when it delegated power to limit the fields of graduate study under paragraph 6(h) (2). Although Congress expected that graduate II-S deferments would be reduced in proportion to the reduction of categories of graduate study, it did not intend that the rights of students already in graduate schools to a I-S be disturbed. The fact that Congress left paragraph 6(i) (2) unchanged is strong support that, except for the proviso in paragraph 6(h) (1), the granting of I-S deferments was to continue as it had in the past.

 Were we to accept the view of respondent that *all* students receiving a II-S deferment after June 30, 1967 and who had received a baccalaureate degree, regardless of when, became ineligible for I-S postponement, paragraph 6(i) (2) would be nearly emasculated. The most recent graduates from college, after June 30, 1967, are precluded from receiving a I-S by the express terms of the proviso in paragraph 6(h) (1). To hold that graduate students who received a II-S for graduate study were also precluded from obtaining a I-S would render paragraph 6(i) (2) fairly meaningless because almost no one would then be eligible for I-S deferment. Since an interpretation which emasculates a provision of a statute is not to be preferred,

it seems apparent that respondents are under a duty to defer appellant until the end of the academic year.

This result is consistent with the evident purpose of I-S classification to prevent needless disruption of the academic year. It is also consistent with the view articulated in the House Report and the Conference Report that those "students presently accepted for or actively participating in graduate studies, be permitted to continue these studies with a deferred status until they achieve or fail to achieve the degree which would normally mark the completion of their present level of training." See H. R.Rep. No. 267, 90th Cong., 1st Sess., in 1967 U.S.Code Cong. & Admin.News, pp. 1308, 1330, and Conf.Rep. No. 346, 90th Cong., 1st Sess., in id. at pp. 1352, 1359. While a I-S would not necessarily allow completion of study for a degree in all cases it would avoid the waste of an interrupted school year. Further, Congress was concerned about the problems of transition and the difficulties potentially faced by those who had relied on the old scheme in planning their lives and satisfaction of their military obligations. See Conf. Report, *supra*. For example, law students frequently fulfill their military duty after law school with the Judge Advocate General. Since Congress, in creating a new draft system, wrote the proviso of paragraph 6(h) (1) so as only to apply to persons who receive II-S deferments "under *this* paragraph,"[3] there is every reason to believe that Congress also intended to provide for I-S deferments during the transitional years.

 In conclusion, the correct interpretation of the Selective Service Act of 1967 requires that a student in graduate school who has never received a *mandatory* deferment (that is, an *undergraduate* deferment after June 30, 1967) is statutorily entitled to a I-S postponement of his induction until completion of the academic year. Although Congress clearly meant to preclude an undergradu-

---

3. Emphasis added.

ate who received a *mandatory* deferment from claiming a subsequent deferment, no reasonable statutory construction justifies the interpretation that the present graduate student was also meant to be precluded. Appellant has a clear statutory right to a I-S deferment until completion of the school year.

The order below is reversed and the case remanded for proceedings not inconsistent with this decision.