**Stephen L. GREGORY et al., Plaintiffs,**

v.

**Lewis B. HERSHEY et al., Defendants.**

**Civ. A. No. 33057.**

United States District Court,
E. D. Michigan, S. D.

Dec. 23, 1969.

James, Lafferty, Marc Stickgold, De-
troit, Mich., Charles Donahue, Jr., Ann
Arbor, Mich., for plaintiffs.

Joseph Zanglin, Harold Hood, Asst. U. S. Atty., Detroit, Mich., for defendants.

## OPINION

TALBOT SMITH, District Judge.

This case comes before us on a complaint for declaratory judgment, and other relief, arising under the Selective Service Act of 1967, Pub.L. 90–40, June 30, 1967 (81 Stat. 100, 50 U.S.C.App. §§ 451–471), hereinafter termed "the Act." We are now ruling upon a Motion for Summary Judgment (Rule 56(a), Rules of Civil Procedure.)

The named plaintiffs bring the action in their own behalf and on behalf of a class (Rule 23, Federal Rules of Civil Procedure), namely, Selective Service registrants who are fathers and who have received a deferment since June 30, 1967 as post-baccalaureate students pursuing a full-time course of instruction at a college, university, or similar institution of learning, under Section 6(h) (2) of the Act (this deferment being a "graduate II–S"). These plaintiffs have not, however, received pre-baccalaureate deferments ("undergraduate II–S's") since June 30, 1967. They have all been denied fatherhood III–A deferments by the Selective Service System.[1] They assert that they are entitled to such deferment under the Act and Regulation as a matter of right, and that the denial of such deferment is an illegal action by the Selective Service System founded upon an erroneous interpretation of the law. They have exhausted their administrative remedies, and have received orders to report for induction.

The plaintiffs before us in person are generally in like positions with respect to the draft and to their education. They are graduate students. They are well along in preparation for their chosen professional careers. They are married (and, with one exception, prior to the effective date of the Act), are fathers, and have incurred the substantial financial obligations that are today's usual concomitant of advanced educational and professional training. In addition, there are significant health problems with respect to the families of some, but not all, of the plaintiffs, although not of such magnitude, in defendants' judgment, as to warrant the grant to the involved plaintiffs of hardship III–A deferments under Regulation 1622.30(b).

We turn at once to the Regulation in question, 1622.30(a). It provides in pertinent part as follows:

1622.30 "(a) In Class III–A shall be placed any registrant who has a child or children with whom he maintains a bona fide family relationship in their home and who is not a physician, dentist or veterinarian, or who is not in an allied specialist category which may be announced by the Director of Selective Service after being advised by the Secretary of Defense that a special requisition under authority of section 1631.4 of these regulations will be issued by the delivery of registrants in such category, except that a registrant who is classified in Class II–S after the date of enactment of the Military Selective Service Act of 1967 shall not be eligible for classification in Class III–A under the provisions of this paragraph."

Similarly, Section 6(h) (1) of the Act provides in part as follows:

"No person who has received a student deferment under the provisions of this paragraph shall thereafter be granted a deferment under this subsection, nor shall any such person be granted a deferment under subsection (i) of this section if he has been awarded a baccalaureate degree, except for extreme hardship to dependents (under regulations governing hardship deferments), * * *"

Subsection 6(h) (2) of the Act provides in part as follows:

"Except as otherwise provided in this subsection, the President is also

---

1. See, Act § 6(h) (2) ; Regulation 1022.30(a).

authorized, under such rules and regulations as he may prescribe, to provide for the deferment from training and service in the Armed Forces of any or all categories of persons who have children, or wives and children, with whom they maintain a bona fide family relationship in their homes."

The question before us concerns the proper meaning and interpretation of the quoted portions of the Act and the Regulations. This, in turn, requires an examination of the statutory scheme of the Act. In Carey v. Local Board, D. C., 297 F.Supp. 252, aff'd 2 Cir., 412 F.2d 71, the Act was analyzed in the following terms:

"Section 6(h) (1) of the Act, 50 App.U.S.C. § 456(h) (1), directs that the President shall provide for the granting of deferments to students who are satisfactorily pursuing a full time course of instruction in a college at the undergraduate level. This statutory undergraduate deferment continues until the student receives a baccalaureate degree or reaches age twenty-four, whichever occurs earliest. This subsection has no predecessor in the earlier selective service acts. It was enacted in 1967 and became effective on June 30, 1967. Pursuant to 32 C.F.R. § 1622.25, students in this category are classified as II–S (undergraduate II–S deferment.)

"Another category of deferments is provided for in § 6(h) (2) of the Act. This section includes an authorization for the President to provide by regulation for the deferment of graduate students whose deferment he considers essential to the national interest. This section was also enacted with the 1967 amendments, but an almost identical provision was present in the 1948 and 1951 Acts. Section 6(h) of those earlier Acts authorized the President to provide for the deferment of both graduate and undergraduate students, there having been no equivalent in those Acts to the mandatory deferment of undergraduates now found in the current § 6(h) (1). Graduate students deferred under the President's rule-making power are also classified as II–S under 32 C.F.R. § 1622.26 (graduate II–S deferments).

"There is a third category of student deferment which applies to all university students, whether graduates or undergraduates. Under 32 C. F.R. § 1622.15(b) this type of deferment is designated as I–S. Its source is § 6(i) (2) of the Act, which has remained unchanged since 1951. * * * "

It is clear from the files and affidavits appended to the pleadings herein that plaintiffs have been denied fatherhood III–A deferments because of the defendants' belief that the Act prohibits the granting of such deferments to registrants who have received a graduate II–S deferment since June 30, 1967, relying upon Section 6(h) of the Act and Regulation 1622.30(a).

■■ Such construction of both the Act and the Regulation is demonstrably erroneous. In the alternative, if only the Regulation is properly so construed, it is based upon an erroneous interpretation of the Act and unauthorized thereby. For the intent of the statute is clear. "No person," it reads in the quoted 6(h) (1) "who has received a student deferment under the provisions of this paragraph" (*this* paragraph being paragraph 1, the paragraph concerning the pre-baccalaureate, undergraduate II–S deferment) "shall thereafter be granted a deferment under this subsection" (subsection (h), authorizing fatherhood III–A deferments). But the crunch here is that these plaintiffs before us have never had a pre-baccalaureate, undergraduate II–S deferment under the Act. Hence they are not precluded from the fatherhood III–A by the express terms of the Act, and any construction or interpretation contrary thereto is obviously unlawful, as is any Regulation grounded upon such misconstruction. So far as the discretion of the Executive may be argued to support

**4**

defendants' interpretation, such discretion is not boundless. Thus the Executive could not, in his discretion, provide for the deferment of Michigan fathers but not Indiana fathers. It must, to be lawfully exercised, not conflict with the express provisions of the Act.

A similar question has been presented in the so-called I–S cases. Those cases involved the availability of the I–S deferment under Section 6(i) (2) of the Act for those students who (as the plaintiffs in the case before us) had received a graduate (but not an undergraduate) II–S deferment since the effective date of the Act, June 30, 1967. Regulation 1622.15(b) denies the right to a I–S deferment to a student who has previously received a II–S deferment, just as Regulation 1622.30(a) in the case before us denies a fatherhood III–A to registrants who have received a II–S. But upon a critical examination of the Act it has been clear to a number of courts, Ellis v. Hershey, 302 F.Supp. 347 (E.D.Mich. April 30, 1969): Bowen v. Hershey, 410 F.2d 962 (1st Cir. 1969); Carey v. Local Bd. No. 2, D.C., 297 F. Supp. 252, aff'd 412 F.2d 71 (C.A. 2, 1969); Foley v. Hershey, 409 F.2d 827 (7th Cir. 1969); Marsano v. Laird, 412 F.2d 65 (CA 2, 1969); that the Act forbade the granting of a I–S only to those students who had received an undergraduate II–S under Section 6(h) (1) of the Act, but not to those who had received a graduate II–S under the provisions of 6(h) (2) of the Act.

We are cited to portions of the legislative history tendered in explanation of the scheme of the statute, but we do not view the Act as involving the kind of ambiguity that warrants an examination of the legislative history for our guidance.

■ The defendants challenge our jurisdiction, arguing that Section 10(b) (3) of the Act bars pre-induction review. Defendants' obstacle, of course, is Oestereich v. Selective Service System Board No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968). But defendants seek to distinguish *Oestereich*. They rely primarily upon the concession by the Government found in that case. Thus, in this regard, the defendants argue

"In his brief before the Supreme Court, the Solicitor General conceded that Oestereich was a full-time divinity student and recognized that he was therefore entitled to the unequivocal exemption afforded such registrants by Section 6(g) of the Act. The Supreme Court agreed and held that Section 10(b) (3) would not bar pre-induction judicial review in that case. The Court accepted the Solicitor General's assurance that *Oestereich* was entitled to the divinity student exemption and agreed that there was no statutory authorization for his reclassification pursuant to regulations which were triggered by "activities or conduct not material to the grant or withdrawal of the exemption" (*i.e.* Oestereich's status as a divinity student) 393 U.S. at 237, 89 S.Ct. 414. The Court therefore concluded that to compel one who was clearly *exempt* from military service to submit to such service (or to face criminal prosecution) in order to establish his "plain and unequivocal" and *uncontested* right to such an exemption would be unduly harsh, 393 U.S. at 238, 89 S.Ct. 414, and held Section 10(b) (3) to be inapplicable." (Page 4, Defendants' Brief. All emphasis in original.)

We attach no significance to the concession by the Government in that case. Gracious it may have been, but the resolution of this kind of question does not turn upon Government's grace. Nor, as we read the case, did the Supreme Court rely upon any confession of error by the Government. Rather the thrust of its opinion was that the "conduct of [the] Local Board [was] basically lawless." 393 U.S. at 237, 89 S.Ct. at 416. Moreover, here, as in *Oestereich*, "there is no exercise of discretion by a Board in evaluating evidence and in determining

whether a claimed exemption is deserved." *Id.* at 238, 89 S.Ct. at 416.

The defendants stress also that *Oestereich* involved a case of a statutorily granted exemption. But whether lawless action by a Local Board involves an exemption or a deferment, the action remains lawless. Neither dictionary definitions nor semantic subtleties control basic statutory rights. It is clear from the I–S cases heretofore cited that the denial of the statutory right to a II–S deferment under Section 6(i) (2) of the Act likewise calls for judicial review. We are aware, we note in passing, of Anderson v. Hershey, 410 F.2d 492 (CA. 6, 1969), which limits the holding of the invalidity of the delinquency regulations in *Oestereich* to those situations in which the delinquency regulations apply to statutory exemptions.

In summary, as to jurisdiction, this matter concerns, not a deferment resting in the discretion of a Local Board or Selective Service official, but a deferment mandated by regulation; there is no factual question (or mixed question of fact and law) presented to the Court for decision, but a question of law only. Such legal question is, as well, applicable to an entire class of registrants, not simply to one particular individual. A civil action, moreover, in this Court, is the only feasible opportunity which this class of registrants has to present before a competent forum their legal arguments to obtain a determination, for the entire class, of the validity, of their sought induction under these circumstances.

■ Upon a consideration of these factors it is our conclusion under the teachings of *Oestereich* that we have jurisdiction, that the cause of action shall be maintained as a class action, Rule 23, Rules of Civil Procedure, and that Regulation 1622.30(a), interpreted by defendants as hereinabove described, is illegal because founded on an erroneous interpretation of the Act and unauthorized thereby.

Suitable orders may be presented.