Thomas E. WHITMORE, Plaintiff,

v.

Curtis W. TARR, National Director of Selective Service, Lee G. Liggett, Nebraska State Director of Selective Service, Nebraska, Selective Service Local Board No. 30, Omaha, Douglas County, Nebraska (Messrs. Oscar T. Doerr, Lyle D. Remde and William R. Milner, members), Defendants.

Civ. No. 1693L.

United States District Court,
D. Nebraska.

Oct. 22, 1970.

James P. Monen, Norfolk, Neb., for plaintiff.

William J. Tighe, Asst. U. S. Atty., for defendants.

## MEMORANDUM

URBOM, Judge.

The plaintiff in this action is a June, 1969, law school graduate, married, and the father of a two-year-old daughter. The plaintiff attended Creighton University from his enrollment in September, 1963, until he received his baccalaureate degree in June, 1967, and during this entire period of undergraduate study he was deferred from military service because of a II–S deferment granted by his local Selective Service board. From September, 1966, until June, 1969, the plaintiff attended the Creighton University School of Law. Apparently the plaintiff's first year of law school was concurrent with his last year of undergraduate school. During this entire period of graduate study the plaintiff was again deferred from military service because of a II–S classification. From September 15, 1967, until his graduation the plaintiff's classification was graduate II–S under § 6(h)(2) of the Military and Selective Service Act of 1967. The plaintiff was married in November, 1967, and on July 2, 1968, became the father of a daughter, with whom he has maintained a bona fide family relationship in his home at all times since her birth. On June 12, 1968, the plaintiff notified his local board that his wife was pregnant and requested classification in Class III–A. On June 13, 1968, the local board notified the plaintiff that his II–S deferment would be continued. Thereafter the plaintiff undertook numerous renewed requests for classification in Class III–A and appeals at all administrative levels. The local board uniformly took the position that he was not entitled to a III–A fatherhood deferment and continued to classify the plaintiff in II–S during his law school education. After graduation from law school the plaintiff was classified I–A as available for induction. On April 30, 1970, the plaintiff received an order to report for induction on May 24, 1970. This induction date was subsequently postponed until June 12, 1970, at the request of the United States Attorney after the plaintiff filed this suit on May 15, 1970. On June 4, 1970, this court entered an order granting a preliminary injunction preventing plaintiff's induction into the armed forces until final disposition of this matter. The trial of the action on the merits was advanced and consolidated with the hearing of the application for preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a)(2), briefs were submitted to the court, and oral arguments heard. The matter now stands ready for final determination.

## I. NATURE OF *GREGORY v. HERSHEY* CLASS ACTION

The United States District Court for the Eastern District of Michigan on February 27, 1970, in Gregory et al. v. Hershey et al., 51 F.R.D. 188, ruled in favor of the plaintiff-Selective Service registrants therein and an order was entered requiring the defendant-Selective Service officials to classify in Class III–A the named plaintiffs and all others similarly situated upon showing that they are members of the class of plaintiffs as defined in the order. Judge Talbot Smith in his "Judgment and Order in the Nature of Mandamus" dated February 27, 1970, defined the class of plaintiffs as:

"* * * (A)ll Selective Service registrants who:

(a) have a child or children with whom they maintain a bona fide family relationship in their homes, and

(b) are not physicians, dentists, or veterinarians or in an allied specialist category, and

(c) have not received an undergraduate II–S deferment under the Military Selective Service Act of 1967 (50 U.S.C. App. §§ 451–473) * * * but

(d) have received a graduate II–S deferment under said Act * * *."

Judge Smith on February 27, 1970, also entered an "Order Determining the

Validity of Class Action." The court found, inter alia, that:

"2. The prerequisites to a class action as set forth in Rule 23(a) of the Rules of Civil Procedure have been satisfied, in that the class being represented is so numerous that joinder of all members is impracticable, there are questions of law and fact common to the class, the claims or defenses of the representative parties are typical of the claims or defenses of the class, and the representative parties will fairly and adequately represent the interests of the class;

"3. The prosecution of separate actions, by individual members of the class would create a risk of inconsistent or varying adjudications, which Rule 23(b) (1) of the Rules of Civil Procedure seeks to avoid, with respect to individual members of the class, would establish incompatible standards of conduct for the defendants, and such incompatible standards make declaratory relief with respect to the class as a whole appropriate;

"4. The defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final relief in the nature of mandamus and corresponding declaratory relief with respect to the class as a whole, as contemplated by Rule 23(b) (2) of the Rules of Civil Procedure; and that

"5. Notification of members of the class is impractical because of the number of members and the absence of any reasonable way of identifying them; therefore

"It is hereby ordered, that the above cause of action shall be allowed to be maintained as a class action. * * *"

These orders of the federal court in Michigan are found as copies attached to the complaint and admitted to as true by the defendants in their answer. See filing No. 11.

From these orders it appears that the court in *Gregory* was satisfied that the action was a class action within

the meaning of Rule 23(b) (2) of the Federal Rules of Civil Procedure and made appropriate findings to that effect. This court, then, cannot and will not look behind those findings. The validity of the class action was a subject for inquiry at the time of its inception and the trial court was the body uniquely in the position to weigh the relevant facts and circumstances requisite to a Rule 23 action. Those facts are not now before this court and the court can make no judgment as to the validity of the *Gregory* action as a class action. This court shall then consider Judge Smith's findings conclusive and assume that *Gregory* was a class action.

## II. JURISDICTION OF THE COURT

The defendants have by way of answer challenged the jurisdiction of this court to render a decision in this case involving preinduction judicial review of a Selective Service classification. Section 10(b) (3) of the Selective Service Act of 1967 states:

"No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution. * * *" 50 U.S.C. App. § 460(b) (3)

The defendants contend that this flat prohibition against judicial review precludes this court's jurisdiction over the subject matter. The plaintiff alleges, inter alia, that since Judge Smith found the *Gregory* case to be a valid class action and this court assumes its validity as such, the case at hand becomes a matter of enforcement of the judgment of the Michigan class action and this court's only task is to determine whether the plaintiff is a member of the class of plaintiffs named in the *Gregory* case. This position would at least infer that the court must conclusively presume the prior court's jurisdiction. The court points out that the issue is not so easily disposed of as suggested by either party.

Although § 10(b) (3) appears to prohibit flatly any and all judicial review

except as a defense to a criminal prosecution, certain exceptions have been carved out of that broad prohibition. The first exception to be recognized was the right to habeas corpus following induction. See Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946), and Witmer v. United States, 348 U.S. 375, 377, 75 S.Ct. 392, 99 L.Ed. 428 (1955). The most recent area of exception created by the Supreme Court of the United States is that found in Oestereich v. Selective Service System, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968). That case involved a registrant who was entitled to a IV–D classification under the Selective Service Act and, after participation in anti-war activities, his IV–D exemption was revoked and the registrant was reclassified I–A. In holding that the local Selective Service board could not revoke the mandatory IV–D classification and in allowing judicial review the Supreme Court stated:

> "We deal with conduct of a local Board that is basically lawless. * * * In such instances, as in the present one, there is no exercise of discretion by a Board in evaluating evidence and in determining whether a claimed exemption is deserved. The case we decide today involves a clear departure by the Board from its statutory mandate. To hold that a person deprived of his statutory exemption in such a blatantly lawless manner must either be inducted and raise his protest through habeas corpus or defy induction and defend his refusal in a criminal prosecution is to construe the Act with unnecessary harshness. * * * "

In Gregory, 311 F.Supp. 1, the court was also faced with the bar to judicial review found in § 10(b) (3). The court found jurisdiction for review of the Gregory classification because, as in Oestereich, the "conduct of the local Board [was] basically lawless." In summarizing Judge Smith stated:

> " * * * (A)s to jurisdiction, this matter concerns, not a deferment rest-

ing in the discretion of a Local Board or Selective Service official, but a deferment mandated by regulation; there is no factual question (or mixed question of fact and law) presented to the Court for decision, but a question of law only. Such legal question is, as well, applicable to an entire class of registrants, not simply to one particular individual. A civil action, moreover, in this Court, is the only feasible opportunity which this class of registrants has to present before a competent forum their legal arguments to obtain a determination, for the entire class, of the validity, of their sought induction under these circumstances.

> "Upon a consideration of these factors it is our conclusion under the teachings of Oestereich that we have jurisdiction. * * * "

This court doubts that the Oestereich case is controlling and dispositive of the jurisdictional question found in Gregory. In Oestereich there was a clear statutory mandate requiring the local board to award the registrant a IV–D exemption and, moreover, the local board had taken that exemption away from the registrant apparently in order to discipline him for his anti-war activities. The Supreme Court found the action taken by the local board to be "blatantly lawless." Such is not the clear-cut circumstance in Gregory and the present case. In the Gregory class action the registrants were attempting to obtain a III–A classification as a matter of right. However, under § 6 (h) (2) of the Act a deferment because of paternity is not mandatory; rather, the President was authorized to provide for such a deferment if he chose to do so. The President sought to establish the fatherhood deferment in 32 C.F.R. § 1622.30, in pertinent part as follows:

> "(a) In Class III–A shall be placed any registrant who has a child or children with whom he maintains a bona fide family relationship in their home * * * except that a registrant who is classified in Class II–S

after the date of enactment of the Military Selective Service Act of 1967 shall not be eligible for classification in Class III–A under the provisions of this paragraph."

This regulation was considered in *Gregory* to be rendered ambiguous because it makes no distinction between the graduate and undergraduate II–S classifications. Section 6(h) (2) of the Military Selective Service Act of 1967, which authorizes the deferment of fathers, also authorizes the deferment of graduate students, while § 6(h) (1), which provides for the deferment of undergraduate students, specifically excludes them from further deferment except for graduate study, deferrable employment or extreme hardship. The court in *Gregory* found that the only reasonable construction to be placed on the regulation when read with the Act is that the President intended II–S as mentioned in the regulation, supra, to mean *undergraduate* II–S, thereby preserving the availability of the III–A classification to those registrants who had received a graduate II–S classification since the passage of the Act. Apparently the court considered the "authorization" in § 6(h) (2) to be an obligatory command which required the deferment of all fathers except those specifically excluded by the Act. The court held that the class of plaintiffs therefore were entitled to the III–A classification as a matter of right because of the mandatory term "shall" used in the regulation and that the Selective Service System's denial of that classification to these registrants amounted to unlawful conduct.

I am not of the opinion that (1) the *Gregory* court's construction of the regulation with the Act is the only construction reasonable or possible, or (2) the action of the local board in withholding a III–A classification in such a situation where the regulation is ambiguous amounts to the "blatantly lawless" conduct found in *Oestereich* sufficient to surmount the blanket prohibition against judicial review found in § 10(b) (3) of

the Act. Nevertheless, I am convinced that I am not at liberty to declare that the *Gregory* court had no jurisdiction over the subject matter of that action and the present action. Similarly, I am not free to declare that this court has no jurisdiction to enforce the judgment entered in the *Gregory* case.

The Supreme Court of the United States has articulated the following standard concerning the res judicata effect of a prior judgment court's determination of subject matter jurisdiction:

"Following the *Baldwin* case [Baldwin v. Iowa State Traveling Men's Ass'n, 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244 (1931), which held that where an original judgment forum fully litigated the issue of jurisdiction over the person a subsequent court enforcing the original judgment is bound by the original court's finding of jurisdiction], this Court soon made clear in a series of decisions that the general rule is no different when the claim is made that the original forum did not have jurisdiction over the subject matter. Davis v. Davis, 305 U.S. 32, 59 S.Ct. 3, 83 L.Ed. 26; Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104; Treinies v. Sunshine Mining Co., 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85; Sherrer v. Sherrer, 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429. In each of these cases the claim was made that a court, when asked to enforce the judgment of another forum, was free to retry the question of that forum's jurisdiction over the subject matter. In each case this Court held that since the question of subject-matter jurisdiction had been fully litigated in the original forum, the issue could not be retried in a subsequent action between the parties." Durfee v. Duke, 375 U.S. 106, 112, 84 S.Ct. 242, 245, 11 L.Ed.2d 186 (1963)

█ Narrowly speaking, it may be true that the judgment of a court is assailable for want of jurisdiction over the subject matter at any time the judg-

ment is sought to be enforced. Thompson v. Whitman, 18 Wall. 457, 85 U.S. 457, 21 L.Ed. 897 (1873). However, it is also true that "the burden of undermining the verity [of the judgment court's finding of jurisdiction] rests heavily on the assailant." Williams v. North Carolina, 325 U.S. 226 at 233–234, 65 S.Ct. 1092, 1097, 89 L.Ed. 1577 (1944). The standard provided for examining the judgment of a prior court is as follows:

"A court does not have the power, by judicial fiat, to extend its jurisdiction over matters beyond the scope of the authority granted to it by its creators. There must be admitted, however, a power to interpret the language of the jurisdictional instrument and its application to an issue before the court. Where adversary parties appear, a court must have the power to determine whether or not it has jurisdiction of the person of a litigant, or whether its geographical jurisdiction covers the place of the occurrence under consideration. Every court in rendering a judgment tacitly, if not expressly, determines its jurisdiction over the parties and the subject matter. An erroneous affirmative conclusion as to the jurisdiction does not in any proper sense enlarge the jurisdiction of the court until passed upon by the court of last resort, and even then the jurisdiction becomes enlarged only from the necessity of having a judicial determination of the *jurisdiction over the subject matter*. When an erroneous judgment, whether from the court of first instance or from the court of final resort, is pleaded in another court or another jurisdiction the question is whether the former judgment is *res judicata*. After a Federal court has decided the question of the jurisdiction over the parties as a contested issue, the court in which the plea of *res judicata* is made has not the power to inquire again into that jurisdictional fact. We see no reason why a court, in the absence of an allegation of fraud in obtaining the judgment, should examine again the question whether the court making the earlier determination on an actual contest over jurisdiction between the parties, did have jurisdiction of the subject matter of the litigation. In this case the order upon the petition to vacate the confirmation settled the contest over jurisdiction. "Courts to determine the rights of parties are an integral part of our system of government. It is just as important that there should be a place to end as that there should be a place to begin litigation. After a party has his day in court, with opportunity to present his evidence and his view of the law, a collateral attack upon the decision as to jurisdiction there rendered merely retries the issue previously determined. There is no reason to expect that the second decision will be more satisfactory than the first." Stoll v. Gottlieb, 305 U.S. 165, 171, 172, 59 S.Ct. 134, 137, 83 L.Ed. 104 (1938)

■ A reading of the *Gregory* decision makes it apparent that the court was specifically interpreting "the language of the jurisdictional instrument and its application to an issue before the court." Stoll v. Gottlieb, supra, page 172, 59 S.Ct. page 137. The matter of jurisdiction was litigated in the federal district court in Michigan and this court's further examination would merely retry an issue previously determined. "There is no reason to expect that the second decision will be more satisfactory than the first."

As Professor Moore ably summarizes: " * * * In brief, then, except for the rare case where power is plainly usurped, if a court has the general power to adjudicate the issues in the class of suits to which the case belongs then its interim orders and final judgment, whether right or wrong, are not subject to collateral attack, so far as jurisdiction over the subject matter is concerned." 7 Moore's Federal Practice, ¶ 60.25[2], p. 266

Although noting my disagreement with the finding of jurisdiction in the *Gregory* decision, this court will not re-try the issue of subject matter jurisdiction. The *Gregory* court did not "plainly usurp" power in finding jurisdiction; rather, the court found its jurisdiction through a thorough and able examination of the relevant statutes, regulations and Supreme Court decisions. That finding will be honored in this court.

### III. BINDING EFFECT OF THE *GREGORY* CLASS ACTION ON THE PARTIES

In the case at bar the plaintiff's first claim for relief is that this court should enforce the judgment of the United States District Court for the Eastern District of Michigan in Gregory v. Hershey. As has previously been stated, that action was found to be a valid class action within the meaning of Rule 23(b)(2). The plaintiff seeks to have the *Gregory* decision considered as res judicata here.

■ The general rule is that:

"A person who is one of a class of persons on whose account action is properly brought or defended in a representative action or defense is bound by and entitled to the benefits of the rules of res judicata with reference to the subject matter of the action." Restatement of Judgments, § 86 (1942)

The Supreme Court of the United States has uniformly followed the rule with respect to true class suits. "If the federal courts are to have the jurisdiction in class suits to which they are obviously entitled, the decree when rendered must bind all of the class properly represented." Supreme Tribe of Ben-Hur v. Cauble et al., 255 U.S. 356, 367, 41 S.Ct. 338, 342, 65 L.Ed. 673 (1921).

Although Rule 23 was amended in 1966, that general rule has continued to be followed and the binding effect of the judgment on the members of the class is beyond doubt. The only provision made in Rule 23 *not* to bind members of the class is under Rule 23(c)(2) where a member of a 23(b)(3) class, after having received notice, may elect to be excluded from the class. However, to be so excluded the member must make a request to the court by a certain date to be excluded or be bound by the decision. Rule 23(c)(3) appears to clearly countenance and accept the res judicata effect by stating:

"The judgment in an action maintained as a class action under subdivision (b)(1) or (b)(2), whether or not favorable to the class, shall include and describe those whom the court finds to be members of the class."

That construction has been accepted by other federal courts:

"A judgment in a class action brought under Rule 23, as amended, is res judicata as to the whole class except as to those members of a (b)(3) type of class action who specifically request to be left out of the action." Snyder v. Harris, 268 F.Supp. 701 (U.S.D.C.E.D.Mo.1967), aff'd 390 F.2d 204 (8 Cir.), aff'd 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319, rehearing denied 394 U.S. 1025, 89 S.Ct. 1622, 23 L.Ed.2d 50.

■ This court, finding that the questions of validity of the class suit and jurisdiction have previously been litigated, now finds that the parties should be bound to the prior judgment by the principles of res judicata.

### CONCLUSION

As the court in the *Gregory* case made appropriate and requisite findings determining the validity of that class action and the defendants here have admitted by way of answer that the plaintiff is a member of the class described in *Gregory*, this court need go no further.

The judgment in the *Gregory* class action is binding on the parties, and this court shall give effect to that judgment.

No examination needs to be made of the plaintiff's second claim for relief,

which would relitigate the merits of the issues originally litigated in *Gregory*. To do so would subvert the interests of justice and judicial economy that are the purposes of the class action.

This memorandum shall constitute findings of fact and conclusions of law.

An appropriate order will be entered granting relief to the plaintiff.