**Paul Robert PASQUIER, Plaintiff,**

**v.**

**Curtis W. TARR, Director of Selective Service, James J. O'Donnell, State Director of Selective Service for Louisiana, Members of Local Board No. 10 of Selective Service System for Caddo Parish, Louisiana, Defendants.**

**Civ. A. No. 70-2056.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

Oct. 14, 1970.

John W. Reed, of New Orleans Legal Assistance Corp., New Orleans, La., for plaintiff.

Don M. Richard, Asst. U. S. Atty., New Orleans, La., for defendants.

COMISKEY, District Judge.

The plaintiff is a father who received a II–S graduate student deferment from November of 1967 to December of 1968, during which period he was attending a school of law. It is undisputed that the plaintiff has not received a II–S undergraduate student deferment subsequent to June 30, 1967. The defendants are Curtis W. Tarr, Director of Selective Service, James J. O'Donnell, State Director of Selective Service for Louisiana, and the Members of Local Board No. 10 of Selective Service System for Caddo Parish, Louisiana. The plaintiff now seeks to compel the Selective Service Board to give him a III–A fatherhood deferment. The Board has refused to grant him such a classification, basing its denial upon Selective Service Regulation 1622.30(a), 32 C.F.R. § 1622.30 (a), which provides in pertinent part:

"In Class III–A shall be placed any registrant who has a child or children with whom he maintains a bona fide family relationship in their home * * * except that a registrant who is classified in Class II–S after the date of enactment of the Military Selective Service Act of 1967 shall not be eligible for classification in Class III–A under the provisions of this paragraph."

The validity of this regulation has been called into question by the filing of this suit and by cross-motions for summary judgment which have been brought by the plaintiff and the defendants. Several points have been raised by the parties to this litigation, and a number of these arguments deserve careful consideration.

The plaintiff first argues that we need not reach the merits of this case because he is part of the class defined in Gregory v. Hershey, 311 F.Supp. 1 (E.D. Mich.1969), which case is currently pending on appeal before the Sixth Circuit.[1] In that case, the plaintiffs brought a class action, and the class was defined by the court as "consist[ing] of all Selective Service registrants who have a child or children with whom they maintain a bona fide family relationship in their homes, who are not physicians, dentists or veterinarians or in an allied specialist category as defined by Selective Service Regulations 1622.30(a) (32 C.F.R. § 1622.30(a)), and who have not received an undergraduate II–S deferment under Section 6(h) (1) of the Military Selective Service Act of 1967 (50 U.S.C. App. § 456(h) (1)), but who have received a graduate II–S deferment under Section

1. Government's memorandum in support of its motion for summary judgment, at page 8.

6(h) (1) of said Act." [2] The Court rendered judgment in favor of the above-defined class, holding that Regulation 1622.30(a) is illegal and void.

█ It is the plaintiff's contention that he is a member of the class defined in Gregory v. Hershey, and that consequently this court is bound by the *Gregory* decision under the principle of res judicata.[3] However, it is the holding of this Court that notice was not given to the members of the *Gregory* class and that such failure to notify constitutes a violation of due process.

2. Gregory v. Hershey, Civil Action No. 33057, United States Court for Eastern District of Michigan, "Order Determining The Validity of Class Action" issued February 27, 1970, which order has been made Exhibit B by the plaintiff to this case.

3. See Germonprez v. Director of Selective Service, 318 F.Supp. 829 (D.C.D.C. 1970), in which the court issued a preliminary injunction mainly because of the fact that the plaintiff was a member of the class defined in Gregory v. Hershey, *supra*.

4. Rule 23(b), (1) and 23(b) (2) of the Federal Rules of Civil Procedure provide:
   "An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
   (1), the prosecution of separate actions by or against individual members of the class would create a risk of
   (A); inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
   (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
   (2), the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; * * *."

5. Rule 23(c), (2), of the Federal Rules of . Civil Procedure provides:

First, let us make clear what is *not* involved here. The court in *Gregory* held that this was a proper class action under Rule 23(b) (1) and 23(b) (2) of the Federal Rules of Civil Procedure.[4] Because of this ruling, Rule 23(c) (2),[5] which sets down the notice requirement for Rule 23(b) (3) [6] class actions, is not involved in this case. Rather, the pertinent provision here is Rule 23(d) (2), which provides:

"In the conduct of actions to which this rule applies, the court may make appropriate orders * * * requir-

"In any class action maintained under subdivision (b) (3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel."

6. Rule 23(b), (3), of the Federal Rules of Civil Procedure provides:
   "An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
   *      *      *      *      *
   "(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A), the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C), the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D), the difficulties likely to be encountered in the management of a class action."

ing, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action * * *."

Evidently, the court in the *Gregory* case felt that no notice whatsoever was required in this case because of the permissive language of Rule 23(d) (2). The court therefore ruled that "[n]otification of members of the class is impractical because of the number of members and the absence of any reasonable way of identifying them * * *."[7]

Whether there should be some kind of notice under Rule 23(d) (2) is a close question. There are authorities who hold the opinion that notice is not required as a matter of due process when the class action is under Rule 23(b) (1) or 23(b) (2) and consequently governed by the notice provisions of Rule 23(d) (2). Rather, these authorities say, "the essential requisite of due process as to absent members of the class is not notice, but the adequacy of representation of their interests by [the] named parties." Northern Natural Gas Co. v. Grounds, 292 F.Supp. 619, 636 (D.Kan.1968); 3B Moore's Federal Practice ¶ 23.72 at 23-1421-23-1422. However, the one Circuit Court of Appeals which has ruled on this question has decided the point differently from the above authorities. In Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1968), the plaintiff sought to qualify his cause of action under either Rule 23(b) (1) or 23(b) (2) because, according to the court, of the theory that notice is not mandatory under these sections, but only discretionary. The Second Circuit went on to say that the plaintiff's effort to avoid hav-

ing the class defined as a Rule 23(b) (3) class action was a futile one because "we hold that notice is required as a matter of due process in all representative actions, and 23(c) (2) merely requires a particularized form of notice in 23(b) (3) actions. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Advisory Committee's Note at 107." 391 F.2d at 564–565. Later in the opinion, while discussing the notice requirements of Rule 23(c) (2), the court nevertheless made some general observations about the notice in class actions in general which is required by due process:

"While the Supreme Court has recognized that class actions represent an exception to the general rule under which only parties are bound by a judgment, the procedure adopted must conform to the requirements of due process and fairly insure the protection of absent parties who are to be bound. Hansberry v. Lee, 311 U.S. 32, 42, 61 S.Ct. 115, 85 L.Ed. 22 (1940). Notice, as an integral part of due process must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)." 391 F.2d at 568.

We are of the opinion that the *Eisen* decision reaches the correct result. It may be argued here that the plaintiff Pasquier, who claims to be a member of the *Gregory* class and therefore seeks the benefits of that decision, has no objection to the failure of that court to give any kind of notice to him and the other absent members of the class. We believe, however, that the matter should be viewed from both sides, not just from the point of view of the plaintiff. Had the court in the *Gregory* case ruled the other way on the merits of that suit, under the rule pronounced by Northern Natural

7. See Note 2, *supra.*

Gas Co. v. Grounds, *supra*, and Moore's Federal Practice, *supra*, the plaintiff could have challenged the binding effect of the *Gregory* decision on the due process ground of inadequacy of representation. For, as we have heretofore stated, these authorities consider due process satisfied, not where there has been some type of notice, but when the absent members of the class have been adequately represented by the named parties. This rule, so it seems to us, is lacking in fundamental fairness in that it gives absent members of the class two bites at the apple at the expense of the defendant. For if a court rules on the merits in favor of the class, the absent members can reap the benefits of such a decision. But if the court should rule against the class on the merits, then, as we have hitherto noted, they can argue that they were not adequately represented. This leaves a defendant to a Rule 23(b) (1) or 23(b) (2) class action in a most precarious position, and we simply cannot subscribe to a rule of law with such unfair consequences.

It is not appropriate for us to rule on the type of notice which a court should give to absent members of a Rule 23 (b) (1) or 23(b) (2) class. Rather, we hold only that the absolute failure to give any kind of notice violates due process, and that we are therefore not bound by the holding in Gregory v. Hershey, *supra*. Nevertheless, we are impressed with the solution to this problem reached by the court in Berman v. Narragansett

Racing Association, 48 F.R.D. 333 (D.R. I.1969). This case involved a Rule 23(b) (1) class action. After noting that "[t]he method of notice in a (b) (1) class action is discretionary with the court, *subject to constitutional requirements of due process*," 48 F.R.D. at 338 (emphasis ours), the court ruled that the absent members of the class who could not be identified by the parties were to be notified by publication of "a reasonably prominent notice in national media * * *." *Ibid.* One of the publications mentioned by the court as a possible medium through which the absent members could be notified was the Wall Street Journal.

Since we hold that we are not bound by the *Gregory* case under the principle of res judicata, we proceed to the merits. In so doing, we enter a somewhat complex area of statutory interpretation.

There are two types of student deferments under the Military Selective Service Act of 1967: undergraduate and graduate student deferments. Both of these deferments are referred to as II–S deferments by the Selective Service System. The undergraduate student deferments are governed by Section 6(h) (1) of the Act, 50 U.S.C. App. § 456(h) (1),[8] which makes it mandatory for the President to grant deferments to full-time undergraduate students. On the other hand, the source of graduate student deferments is Section 6(h) (2) of the Act, 50 U.S.C. App. § 456(h) (2),[9] which

---

8. Section 6(h), (1) of the Military Selective Service Act of 1967, 50 U.S.C.App. § 456(h) (1), provides in pertinent part:
"Except as otherwise provided in this paragraph, the President shall, under such rules and regulations as he may prescribe, provide for the deferment from training and service in the Armed Forces of persons satisfactorily pursuing a full-time course of instruction at a college, university, or similar institution of learning and who request such deferment. A deferment granted to any person under authority of the preceding sentence shall continue until such person completes the requirements for his baccalaureate degree, fails to pur-

sue satisfactorily a full-time course of instruction, or attains the twenty-fourth anniversary of the date of his birth, whichever first occurs."

9. Section 6(h) (2), of the Military Selective Service Act of 1967, 50 U.S.C.App. § 456(h) (2), provides in pertinent part:
"Except as otherwise provided in this subsection the President is authorized, under such rules and regulations as he may prescribe, to provide for the deferment from training and service in the Armed Forces of any or all categories of persons * * * whose activity in graduate study, research, or medical, dental, veterinary, optometric,

authorizes, but does not compel, the President to defer graduate students whose work is helpful to the national interest. Also included in Section 6(h) (2) is the following language upon which is based the III–A fatherhood deferment with which we are concerned in this case:

"Except as otherwise provided in this subsection, the President is also authorized, under such rules and regulations as he may prescribe, to provide for the deferment from training and service in the Armed Forces of any or all categories of persons who have children, or wives and children, with whom they maintain a bona fide family relationship in their homes."

As we have seen, the plaintiff has been refused a III–A fatherhood deferment because of Selective Service Regulation 1622.30(a), 32 C.F.R. § 1622.30(a), which denies such a classification to "a registrant who is classified in Class II–S after the date of enactment of the Military Selective Service Act of 1967 * * *." It is persuasively argued by the plaintiff that this regulation is the result of an erroneous interpretation of the Act, specifically the following proviso in part of 6(h) (1), which paragraph, as we have seen, deals only with *undergraduate* student deferments:

"No person who has received a student deferment under the provisions of this paragraph shall thereafter be granted a deferment under this subsection, nor shall any such person be granted a deferment under subsection (i) of this section if he has been awarded a baccalaureate degree, except for extreme hardship to dependents (under regulations governing hardship deferments), or for graduate study, occupation, or employment necessary to the maintenance of the national health, safety, or interest."

There can be no doubt about the fact that the above proviso includes the III–A fatherhood deferment, which is found in the same subsection (Subsection 6 (h)). However, the plaintiff correctly points out that this proviso prohibits the granting of deferments under subsections 6(h) and 6(i) only to persons who have "received a student deferment under the provisions of *this paragraph*" (emphasis added), which obviously limits the effect of this prohibition to persons who have received *undergraduate* student deferments under 6(h) (1) since the effective date of the 1967 Act (June 30, 1967). It is further noted that the plaintiff has not received a II–S *undergraduate* deferment under 6(h) (1) subsequent to this date, but only a II–S *graduate* deferment under 6(h) (2). Therefore, the plaintiff's argument concludes since he is clearly not covered by the proviso in 6(h) (1), the Selective Service regulation in question, which denies a III–A classification to persons who have received either an undergraduate *or* a graduate student deferment since June 30, 1967, is based on an erroneous interpretation of the proviso in question.

Fortunately, this difficult statutory terrain has been previously explored by a number of courts which were faced with a different but very similar problem. These courts were concerned with the same proviso in 6(h) (1), but the deferment involved in those cases was a I–S deferment, under which any full time college student who is ordered to report for induction must be deferred either until the end of the academic year or until he stops attending the college, whichever is earlier. Section 6(i) (2) of the Military Selective Service Act of 1967, 50 U.S.C. App. § 456(i) (2).[10]

osteopathic, scientific, pharmaceutical, chiropractic, chiropodial, or other endeavors is found to be necessary to the maintenance of the national health, safety, or interest * * *."

10. Section 6(i) (2) of the Military Selective Service Act of 1967, 50 U.S.C.App. § 456(i) (2), provides in pertinent part:
    "Any person who while satisfactorily pursuing a full-time course of instruc-

Unlike the III–A fatherhood deferment in our case, the I–S deferment is a mandatory one. Under Section 6(i) (2) the Selective Service Board has no choice once a request for a I–S deferment has been made by an eligible college student. However, there are certain statutory exceptions to the I–S deferment, one of which is the same proviso in 6(h) (1) which concerns us in this case. The I–S deferment, like the III–A fatherhood deferment, is clearly covered by this proviso. As we have heretofore seen, this proviso prohibits the granting of any of the deferments provided in subsections 6(h) and 6(i) to anyone who has received a deferment under paragraph 6(h) (1), and paragraph 6(h) (1) deals only with *undergraduate* student deferments. However, there is a Selective Service regulation, Regulation 1622.-15(b), which states that a student who has had *any* II–S deferment under the 1967 Act, whether graduate or undergraduate, cannot get a I–S deferment. The validity of this regulation has been challenged in a number of cases on the ground that its exclusion of persons who have received graduate student deferments under the 1967 Act, as well as those who have received undergraduate student deferments, is an unwarranted extension of 6(h) (1). Thus, the issue in these I–S cases was extremely similar to that facing this Court. There has been a fairly considerable amount of jurisprudence on the I–S question, and the overwhelming weight of authority [11] has ruled that the applicable Selective Service regulation, Regulation 1622.-15(b), is invalid for the reason stated above. In one of the leading cases on this point, Marsano v. Laird, 412 F.2d 65, 68 (2d Cir. 1969), the Second Circuit said:

"This proviso in § 6(h) (1) applies on its face only to those who receive undergraduate deferments after June 30, 1967, the date of the new Act, because it bars those being deferred 'under the provisions of *this paragraph*' [emphasis supplied] from receiving a I–S. If Congress had intended to exclude from I–S postponement *any* person deferred as a II–S after the effective date of the act, then it clearly would have specified that the bar applied to persons who had received a student deferment under this 'subsection,' rather than under this 'paragraph.' Additionally, Selective Service has explicitly recognized that paragraph 6(h) (1) has no application to any deferments received prior to June 30, 1967. Local Board Memoranda Nos. 84, 87. Appellant has never received such a deferment, since he graduated from college prior to the enactment of the 1967 Act and his deferment since then has been for *graduate* study pursuant to paragraph 6 (h) (2). By its explicit terms this proviso is inapplicable to appellant."

The plaintiff forcefully argues that we should apply the reasoning of these very similar I–S cases to the matter now before us. This argument is a strong one, and was adopted by the court in Gregory v. Hershey, *supra*, 311 F.Supp. 1 (E.D. Mich.1969). There, the plaintiffs were fathers who had received only graduate deferments since June 30, 1967. Like

---

tion at a college, university, or similar institution is ordered to report for induction under this title, shall, upon the facts being presented to the local board, be deferred (A) until the end of such academic year, or (B) until he ceases satisfactorily to pursue such course of instruction, whichever is the earlier * * *."

11. See, e. g., Crane v. Hershey, 410 F.2d 966 (1st Cir. 1969); Marsano v. Laird, 412 F.2d 65 (2d Cir. 1969).; Foley v. Hershey, 409 F.2d 827 (7th Cir. 1969);

Nestor v. Hershey, 425 F.2d 504 (D.C. Cir. 1969); Carey v. Local Board No. 2, 297 F.Supp. 252 (D.Conn.1969), aff'd 412 F.2d 71 (2d Cir. 1969).; Kaplysh v. Allen, 303 F.Supp. 1007 (N.D.Ohio 1969).; Lerner v. Hershey, 312 F.Supp. 99 (N.D.Ga.1970); Keller v. Hershey, 309 F.Supp. 687 (S.D.Fla.1969); Weppler v. Hershey, 308 F.Supp. 447 (N.D. Ill.1969); Darby v. Local Board 25, Civil Action No. 70–55 (E.D.La.1970). *Contra*: Rich v. Hershey, 408 F.2d 944 (10th Cir. 1969).

plaintiff Pasquier, the Selective Service Board had refused them III–A classifications because of Selective Service Regulation 1622.30(a). The court declared this regulation to be invalid, basing its holding in part on this conclusion:

"It is clear from the files and affidavits appended to the pleadings herein that plaintiffs have been denied fatherhood III–A deferments because of the defendants' belief that the Act prohibits the granting of such deferments to registrants who have received a graduate II–S deferment since June 30, 1967, relying upon Section 6(h) of the Act and Regulation 1622.30(a).

"Such construction of both the Act and the Regulation is demonstrably erroneous. In the alternative, if only the Regulation is properly so construed, it is based upon an erroneous interpretation of the Act and unauthorized thereby. For the intent of the statute is clear. 'No person,' it reads in the quoted 6(h) (1) 'who has received a student deferment under the provisions of this paragraph' (*this* paragraph being paragraph 1, the paragraph concerning the pre-baccalaureate, undergraduate II–S deferment) 'shall thereafter be granted a deferment under this subsection' (subsection (h), authorizing fatherhood III–A deferments). But the crunch here is that these plaintiffs before us have never had a pre-baccalaureate, undergraduate II–S deferment under the Act. Hence they are not precluded from the fatherhood III–A by the express terms of the Act, and any construction or interpretation contrary thereto is obviously unlawful, as is any Regulation grounded upon such misconstruction." 311 F.Supp. at 3.

We are in complete agreement with the *Gregory* case that the proviso in 6(h) (1) prohibits the granting of III–A deferments only to persons who have received undergraduate student deferments since June 30, 1967. We therefore hold that the plaintiff is correct in his argument that he is not prohibited by the relevant language in 6(h) (1)

from receiving a III–A classification. But does this automatically render Selective Service Regulation 1622.30(a) invalid? We think not. The fact that 6(h) (1) does not *prohibit* the plaintiff from receiving a III–A classification does not mean that it *compels* the granting of such a deferment. It is on this point that the legal paths leading to the solutions of the I–S and III–A issues cease to run parallel to each other and begin to diverge. For a chief difference between the two deferments is that the I–S deferment is mandatory, while the III–A classification is only discretionary. Thus, Section 6(i) (2), which provides for the I–S classification, states that a person attending a college, university or similar institution on a full time basis who is ordered to report for induction *"shall,* upon the facts being presented to the local board, be deferred" with a I–S classification. (Emphasis added.) In Marsano v. Laird, *supra,* 412 F.2d 65, 68 (2d Cir. 1969), the court said:

"The statutory grant of a I–S deferment in paragraph 6(i) (2) is stated in mandatory rather than discretionary terms. A person fulfilling the requirements of the paragraph has a plain and unqualified right to be deferred until the end of the academic year."

But the granting of a III–A deferment is made discretionary rather than mandatory by Section 6(h) (2), which says that the President is not compelled, but "authorized, under such rules and regulations as he may prescribe, to provide for" the granting of III–A deferments. Thus, by saying that the President "is authorized" to provide for the granting of III–A fatherhood deferments rather than stating that such classifications "shall" be granted, the statute specifically allows the Selective Service System to limit the granting of III–A fatherhood deferments by appropriate regulations. For this reason, it cannot be said that Selective Service Regulation 1622.30(a) conflicts with the express terms of the Selective Act, although this may well be true in the case of the regulation ap-

**1358**

plicable to I–S deferments, Selective Service Regulation 1622.15(b).

■ Plaintiff also argues that even if the provision setting up III–A fatherhood deferments does so in discretionary rather than mandatory terms, the Selective Service regulation in question is still invalid because it was promulgated under a mistake of law [12] and because it is unreasonable, contrary to the intent of Congress, arbitrary and capricious. We read both of these arguments as attacking the regulation as an abuse of the discretion given the President to provide for III–A fatherhood deferments in that there is allegedly no rational basis for the promulgation of the regulation in question.

But we hold that we are not at liberty to pass on these arguments on the merits because we are barred from reviewing these matters by Section 10(b) (3) of the Military Selective Service Act of 1967, 50 U.S.C. App. § 460(b) (3), which provides in pertinent part:

"No judicial review shall be made of the classification or processing of any registrant by local boards, appeals boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title, after the registrant has responded either affirmatively or negatively to an order to report for induction * * *."

Plaintiff seeks to fit this case within the ambit of Oestereich v. Selective Service System Local Board No. 11, 393 U.S.

233, 236, 89 S.Ct. 414, 21 L.Ed.2d 402 (1969), and Breen v. Selective Service Local Bd. No. 16, Bridgeport, Conn., 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970), but we are of the opinion that these cases are not applicable to the matter now before us. In *Oestereich*, the plaintiff was a student at a theological school whose classification was changed from a IV–D under Section 6(g) of the Military Selective Service Act of 1967, 50 U.S.C. App. § 456(g),[13] to a I–A classification after he had returned his draft registration card to the Government in protest against the war in Vietnam. The Supreme Court held that Section 10(b) (3) was not a bar to pre-induction review in that case because the Board's action was completely lawless. It is important to note that the provision in the *Oestereich* case made the IV–D classification mandatory rather than discretionary. This was pointed out by the Court when it said that "§ 6(g) of the Act states that 'students preparing for the ministry' in qualified schools 'shall be exempt from training and service' under the Act." 393 U.S. at 235, 89 S.Ct. at 415. The Court concluded:

"We deal with conduct of a local Board that is basically lawless. * * * The case we decide today involves a clear departure by the Board from its statutory mandate. To hold that a person deprived of his statutory exemption in such a blatantly lawless

12. No evidence has been presented in this case to the effect that this regulation was promulgated pursuant to a misunderstanding of the proviso in Section 6(h) (1). On the contrary, it is the Government's contention that "[t]he statutory basis for the provision of 32 C.F.R. 1622.30, which restricts III–A deferments to registrants, classified II–S after the enactment of the 1967 Act, is not the above-quoted language of Section 6(h) (1) but rather the language in 6(h) (2) which provides" for the granting of III–A fatherhood deferments. Government's memorandum in support of its motion for summary judgment at page 10. Thus, the Government asserts that the regulation in question is not based

upon a misunderstanding of the important proviso in 6(h) (1), but solely on the authorization contained in 6(h) (2) for the President to provide for III–A fatherhood deferments.

13. Section 6(g) of the Military Selective Service Act of 1967, 50 U.S.C.App. § 456(g), provides in pertinent part: "* * * [S]tudents preparing for the ministry under the direction of recognized churches or religious organizations, who are satisfactorily pursuing full-time courses of instruction in recognized theological or divinity schools * * * shall be exempt from training and service (but not from registration) under this title."

manner must either be inducted and raise his protest through habeas corpus or defy induction and defend his refusal in a criminal prosecution is to construe the Act with unnecessary harshness." 393 U.S. at 238, 89 S.Ct. at 416–417.

The *Breen* case involved a similar problem. Here, as in *Oestereich*, the plaintiff surrendered his draft registration card in order to protest the Vietnam war. Thereafter, his local draft board changed his classification from that of a II–S undergraduate student to I–A. Again, the Court held that Section 10(b) (3) of the Act was not a bar to pre-induction review. Here, as in *Oestereich,* the Supreme Court was dealing with a classification which was mandatory rather than discretionary. As the Court noted, "The explicit language of the Act provides that the President 'shall' provide for the deferment of undergraduate students except as otherwise provided by the terms of the Act itself   *   *   *." 90 S.Ct. at 664.[14] The Court concluded that this case was indistinguishable from *Oestereich* in that, *inter alia*, "[i]n both cases the order for induction involved a 'clear departure by the Board from its statutory mandate.'"   90 S.Ct. at 666.

Although there can be no question that these cases are applicable to situations in which the Selective Service classifications are mandatory, it is quite a different matter when the provision setting up a classification is couched in discretionary terms. In Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968), a local draft board rejected the plaintiff's contention that he was a conscientious objector and classified him I–

A.   Section 6(j) of the Act, 50 U.S.C. App. § 456(j),[15] does not give a person an absolute right to an exemption as a conscientious objector, but rather gives the local board some discretion in the matter.   Because of this difference between the provision involved in *Clark* and the section involved in *Oestereich,* the Court held that Section 10(b) (3) did bar pre-induction judicial review of the Board's decision:

"In *Oestereich* the delinquency procedure by which the registrant was reclassified was without statutory basis and in conflict with petitioner's rights explicitly established by the statute   *   *   *.   Here, by contrast, there is no doubt of the board's statutory authority to take action which appellee challenges, and that action inescapably involves a determination of fact and an exercise of judgment.   *   *   *

"Here the Board has exercised its statutory discretion to pass on a particular request for classification, 'evaluating evidence and   *   *   *   determining whether a claimed exemption is deserved.'   Oestereich v. Selective Service System Local Bd. No. 11, supra [393 U.S.], at 238, 89 S.Ct., at 416. A Local Board must make such a decision in respect of each of the many classification claims presented to it. To allow preinduction judicial review of such determinations would be to permit precisely the kind of 'litigious interruptions of procedures to provide necessary military manpower' (113 Cong.Rec. 15426 (report by Senator Russell on Conference Committee action)) which Congress sought to pre-

---

14.   The provision under consideration in the *Breen* case was Section 6(h)ᵢ (1)ᵢ of the Military Selective Act of 1967, 50 U.S.C.App. § 456(h) (1), the relevant portion of which can be found at Note 9, *supra.*

15.   Section 6(j) of the Military Selective Service Act of 1967, 50 U.S.C.App. § 456 (j), provides in pertinent part:
    "Nothing contained in this title shall be construed to require any person to

be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form.   As used in this subsection, the term 'religious training and belief' does not include essentially political, sociological, or philosophical views, or a merely personal moral code."

vent when it enacted § 10(b) (3)."
393 U.S. at 258–259, 89 S.Ct. at 426.

The rule applicable to Section 10(b) (3) was well stated by the Circuit Court of Appeals for the District of Columbia in Nestor v. Hershey, 425 F.2d 504, 511 (D.C.Cir.1969), when it said that in such cases "the issue of jurisdiction is inextricably intertwined with the merits of the controversy * * *; in short, the question of jurisdiction hinges upon whether the deferment sought is mandated by statute or is within the discretion of the draft board."

In the recent case of Edwards v. Selective Service Local Board No. 111, 432 F.2d 287 (5th Cir. 1970), the Fifth Circuit Court of Appeals held that Section 10(b) (3) prohibited pre-induction review of a local draft board's refusal to grant an occupational deferment, which refusal was allegedly accompanied by a denial of procedural due process to the plaintiff. The statutory language involved in that case, which language is contained in Section 6(h) (2) of the Act, 50 U.S.C. App. § 456(h) (2), is couched in the identical discretionary terms as is the language providing for a III–A fatherhood deferment.[16] The court therefore noted "that the occupational deferment which Edwards sought was not congressionally mandated or defined but was left within the President's discretion under rules and regulations he might prescribe." at page 292. The court summarized the holdings of the *Oestereich, Breen* and *Clark* cases as follows:

"Fundamentally, these controlling precedents hold that 10(b) (3) cannot sustain such a liberal reading as would forbid preinduction judicial interruption of classification or processing of any registrant by local boards, appeal boards or the President where such classification or processing is (1) without statutory basis, (2) conflicts with rights explicitly established by statute *and* (3) is not dependent upon an act of judgment by selective service officials. Such action is *blatantly lawless* and may be interdicted by judicial action when it occurs. On the other hand, such classifications or procedures as are (a) within the statutory authority of the Selective Service System and (b) involve the exercise of discretion, cannot be interfered with by court action before induction." at page 292.

The court concluded that because of Section 10(b) (3) it could not inquire into the question of whether there had been an abuse of discretion on the part of the State Director of Selective Service:

"Conceding as we must that the Presidential appeal regulations are authorized by law, to hold that pre-induction review is available to Edwards would require us to examine into whether the State Director of Selective Service abused the discretion which the regulations vested in him to determine that this Peace Corps training invitation made a prima facie case for Edwards to receive an occupational deferment. Leaving aside the fact that this appeal only tests the sufficiency of allegations in a complaint where the allegations did not come close to establishing that the registrant was prima facie entitled to a reopening, the very undertaking to make a judicial review of such discretionary Selective Service action is precisely the

16. Section 6(h) (2) of the Military Selective Service Act of 1967, 50 U.S.C.App. § 456(h) (2), provides in pertinent part: "Except as otherwise provided in this subsection the President is authorized, under such rules and regulations as he may prescribe, to provide for the deferment from training and service in the Armed Forces of any or all categories of persons whose employment in industry, agriculture, or other occupations or employment, or whose continued service in an Office (other than an Office described in subsection (f)) under the United States or any State, territory, or possession, or the District of Columbia * * * is found to be necessary to the maintenance of the national health, safety, or interest . * * *."

kind of litigious interruption of military manpower procurement Congress sought to prevent." at page 295.

As we have already indicated, it is our opinion that the III–A fatherhood deferment is a discretionary rather than a mandatory classification and that the plaintiff's remaining attacks on Selective Service Regulation 1622.30(a) are based on the claim that this regulation constitutes an abuse of such discretion. In view of the above authorities on the applicability of Section 10(b) (3) of the Act to claims relating to matters within the discretion of the Selective Service System, we hold that these contentions cannot be passed upon by this Court prior to induction.

It is therefore ordered that the motion of the plaintiff for a summary judgment is denied and the motion of the defendants for summary judgment is granted.