**Howard Mark SANDLER**

v.

**Curtis W. TARR, National Director of Selective Service, et al.**

**Civ. A. No. 71–60–N.**

United States District Court,
District of Maryland.

July 27, 1971.
Memorandum and Order Nov. 3, 1972.

H. Thomas Howell, Baltimore, Md., for plaintiff.

George Beall, U. S. Atty., and James E. Anderson, Asst. U. S. Atty., Baltimore, Md., for defendants.

NORTHROP, Chief Judge.

Plaintiff brought this action for injunctive and other relief to restrain and enjoin defendants from inducting him into the Armed Forces of the United States. On January 22, 1971, this court issued a temporary restraining order; by stipulation of the parties and order subsequently entered on February 1, 1971, the temporary restraining order was extended to remain in force until the case could be heard on its merits. A hearing was held on April 8, 1971 on defendants' motion to dismiss the complaint; on April 14, 1971, this court entered an order staying decision on defendants' motion to dismiss pending fi-

nal disposition of Gregory v. Tarr, 436 F.2d 513 (6th Cir. 1971) by the Supreme Court of the United States. On June 14, 1971, the Supreme Court denied certiorari. 403 U.S. 922, 91 S.Ct. 2229, 29 L.Ed.2d 701 (June 14, 1971).

From September, 1963 until June, 1967, plaintiff was enrolled at the Johns Hopkins University, Baltimore, Maryland, as a full-time undergraduate student. During this period, plaintiff was granted an undergraduate student deferment—II–S. Upon graduation in early June, 1967, plaintiff was enrolled as a full-time graduate student at Northwestern University in Illinois. From September, 1967 until November, 1968, he held a II–S deferment under section 6(h)(2) of the Selective Service Act (graduate student deferment).

On November 7, 1968, plaintiff's local draft board mailed him a Notice of Classification advising him that he had been reclassified from II–S to I–A. At a subsequent personal appearance before the local board, plaintiff requested a I–S(c) deferment for the purpose of completing the academic year of graduate studies. The Board denied this request and classified plaintiff I–A. After a timely notice of appeal, the Appeal Board classified plaintiff I–A. On January 27, 1970, plaintiff's local board again mailed plaintiff a Notice of Classification informing him of the Appeal Board's decision and of his I–A classification.

Plaintiff was married on June 17, 1969 and it is undisputed that at all times since he has maintained a bona fide family relationship and his wife has resided with him continuously. In December, 1969, while his appeal was pending from his local board's denial of his I–S(c) deferment request, plaintiff learned that his wife was pregnant. Plaintiff notified his local board of this fact and requested that his case be re-opened and that he be reclassified in class III–A (fatherhood deferment). Apparently the local board did not re-open plaintiff's file—plaintiff alleges that the board ignored his letter and request.

On March 2, 1970, plaintiff's local draft board mailed to plaintiff an Order to Report for Induction. After plaintiff protested, the State Director of Selective Service, on March 4, 1970, postponed plaintiff's induction until June, 1970. Plaintiff again requested reclassification as I–S(c). This was denied by the State Director on March 25, 1970, and on March 27, 1970, his local board advised plaintiff that he would be scheduled for induction in June, 1970. Plaintiff protested and requested a III–A cal board canceled the scheduled inducclassification. On May 13, 1970, the lotion.

On May 5, 1970, a daughter was born to the plaintiff and his wife and at all times since plaintiff has maintained a bona fide family relationship with his child in his home. Plaintiff notified his local board of this event.

On June 16, 1970, the local board again mailed to plaintiff a Notice of Classification advising him that he had been reclassified I–A. Following a personal appearance before the local board, that board concluded that plaintiff was not entitled to a III–A deferment because plaintiff had received a II–S deferment after June 30, 1967.

On September 17, 1970, the local board again mailed to plaintiff a Notice of Classification notifying plaintiff that the board had refused to classify him III–A. This decision was upheld on appeal to the Appeal Board. Plaintiff again received a Notice of Classification (I–A) on December 1, 1970. On December 2, 1970, the board mailed to plaintiff an Order to Report for Induction at Nashville, Tennessee on January 28, 1971. This action was then instituted.

The defendants have filed a motion to dismiss the action (1) on the ground that the court lacks jurisdiction by virtue of section 10(b)(3) of the Selective Service Act, 50 App. U.S.C. § 460(b)(3) and (2) on the ground that the com-

plaint fails to state a claim upon which relief can be granted.

Section 10(b) (3) of the 1967 Selective Service Act, 50 App. U.S.C. § 460(b) (3) provides:

No judicial review shall be made of the classification or processing of any registrant by local boards . . . except as a defense to a criminal prosecution . . . after the registrant has responded either affirmatively or negatively to an order to report for induction . . .

While a literal reading of this statute would bar all pre-induction judicial review of a registrant's Selective Service classification, the Supreme Court has carved out a limited exception in Oestereich v. Selective Service System Local Board No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968) and Breen v. Selective Service Local Board No. 16, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970). In Oestereich v. Selective Service System, *supra*, plaintiff had a IV–D (ministerial student) exemption. He turned in his draft card in opposition to the Viet-Nam war. His local board declared him delinquent and reclassified him I–A. The district court dismissed his complaint and the Tenth Circuit affirmed, holding that section 10(b) (3) of the Military Selective Service Act precluded pre-induction judicial review. The Supreme Court reversed, holding that the local board was not empowered to reclassify punitively a registrant who was clearly entitled to a statutory exemption. Finding that the conduct of the local board was "basically lawless," the Court stated: "In such instances, as in the present one, there is no exercise of discretion by a Board in evaluating evidence and in determining whether a claimed exemption is deserved. The case we decide today involves a clear departure by the Board from its statutory mandate."

In Breen v. Selective Service Local Board No. 16, *supra*, plaintiff held a II–S deferment as a student in a Boston School of Music. He surrendered his draft card in protest of the Viet-Nam war and his local board reclassified him I–A as being delinquent. Both the district court and court of appeals dismissed under section 10(b) (3). The Supreme Court reversed on the authority of *Oestereich*. The government did not contest plaintiff's factual allegations concerning his student status. The Court refused to recognize any distinction between exemptions (as in *Oestereich*) and deferments. The Court pointed out that the case before it, like *Oestereich*, involved a "clear departure by the Board from its statutory mandate."

■ Whether this court has jurisdiction to entertain this action will depend upon whether the defendants acted lawfully in denying plaintiff a III–A fatherhood deferment. The merits of the controversy are closely related to the jurisdictional issue, and the court always has jurisdiction to determine jurisdiction. *See* Gregory v. Tarr, 436 F.2d 513, 515–516 (6th Cir. 1971); Nestor v. Hershey, 138 U.S.App.D.C. 73, 425 F.2d 504, 511 (1969); Pasquier v. Tarr, 318 F.Supp. 1350, 1360 (E.D.La.1970).

[2] The Selective Service Act of 1967 provides for two classes of student deferments. Section 456(h) (1) [1] provides for the undergraduate student deferment while section 456(h) (2) provides for graduate student deferments.[2]

---

1. 50 App. U.S.C. § 456(h) (1):

Except as otherwise provided in this paragraph, the President shall, under such rules and regulations as he may prescribe, provide for the deferment from training and service in the Armed Forces of persons satisfactorily pursuing a full-time course of instruction at a college, university, or similar institution of learning and who request such deferment. A deferment granted to any person under au-

thority of the preceding sentence shall continue until such person completes the requirements for his baccalaureate degree, fails to pursue satisfactorily a full-time course of instruction, or attains the twenty-fourth anniversary of the date of his birth, whichever first occurs . . . . .

2. 50 App. U.S.C. § 456(h) (2):

Except as otherwise provided in this subsection the President is authorized, un-

It is important to note at this point that the language of the two sections differs markedly. The Act provides that "the President *shall*" provide for the deferment of pre-baccalaureate students, while it states that "the President is *authorized*" to provide for graduate student deferments. (Emphasis supplied.) Undergraduate student deferments, then, are mandatory; graduate student deferments only directory. This distinction becomes important for the proper resolution of this case.

50 App. U.S.C. § 456(h) (1), as has already been indicated, provides for the deferment of undergraduate students who are satisfactorily pursuing a full-time course of college study. The grant of such a deferment, however, involves the waiver by the recipient of other deferments:

> No person who has received a student deferment under the provisions of this paragraph shall thereafter be granted a deferment under this subsection, nor shall any such person be granted a deferment under subsection (i) of this section if he has been awarded a baccalaureate degree . . . .

Section 456(h) (2), which provides for graduate student deferments, also makes provision for the so-called "fatherhood," or III-A deferment:

> Except as otherwise provided in this subsection, the President is also authorized, under such rules and regulations as he may prescribe, to provide for the deferment from training and service in the Armed Forces of any or

all categories of persons who have children, or wives and children, with whom they maintain a bona fide family relationship in their homes.

It is this deferment to which plaintiff contends he is entitled. He has been denied a III-A fatherhood deferment pursuant to Selective Service Regulation 1622.30, 32 C.F.R. § 1622.30(a):

> In Class III-A shall be placed any registrant who has a child or children with whom he maintains a bona fide family relationship in their home and who is not a physician, dentist or veterinarian . . . except that a registrant who is classified in Class II-S after the date of enactment of the Military Selective Service Act of 1967 shall not be eligible for classification in Class III-A under the provisions of this paragraph.[3]

This regulation, as interpreted by the Selective Service System, denies a III-A fatherhood deferment to anyone who has received a II-S student deferment under the 1967 Act. The claim is made that this regulation, as so interpreted, is in conflict with the statute, and that therefore the action of defendants in denying plaintiff a III-A deferment is "blatantly lawless." The argument goes as follows. Section 456(h) (1) states that anyone who has received a deferment under this *paragraph* cannot receive a deferment under this *subsection*. The deferment referred to is the undergraduate student deferment provided for in paragraph (1) of subsection (h) of section 456, Title 50 Appendix, United States Code. The

---

der such rules and regulations as he may prescribe, to provide for the deferment from training and service in the Armed Forces of any or all categories of persons . . . whose activity in graduate study, research, or medical, dental, veterinary, optometric, osteopathic, scientific, pharmaceutical, chiropractic, chiropodial, or other endeavors is found to be necessary to the maintenance of the national health, safety, or interest . . .

3. This regulation has now been superseded by the following regulation, revised as of January 1, 1971:

In Class III-A shall be placed any registrant who prior to the effective date of this paragraph in its present form submitted to his local board information establishing his eligibility for deferment on the grounds of fatherhood under regulations in effect prior to such date, or who is so classified prior to such date, and who continues to maintain a bona fide family relationship in their home with his child or children, except that this paragraph shall not apply to any registrant who subsequently becomes a physician, dentist, or veterinarian.

receipt of this deferment means, then, that the recipient cannot receive, among others, a III–A fatherhood deferment under paragraph (2) of subsection (h), for the statute clearly states that one who has received a II–S deferment under paragraph (1) may not receive any of the other deferments in that subsection. It is clear that the statute does not prohibit a III–A fatherhood deferment to one who has received a II–S graduate student deferment under the 1967 Act. Provision for graduate II–S deferments is made in section 456(h) (2) of the Act; that is, paragraph (2) of subsection (h). Thus, the statutory denial of deferments contained in subsection (h) is only applicable where the claimant has received an undergraduate II–S deferment under the 1967 Act. This is actually so apparent from a reading of the statute that it would hardly seem to merit any extended discussion, because to accord the statute a contrary interpretation would fail to give meaning to the different terms "paragraph" and "subsection." There can be no doubt that Congress understood the difference in the meaning of the two terms. However, an analogous issue has been the source of extensive judicial exposition, and will be adverted to here to demonstrate the propriety of the above statutory construction.

Section 456(h) (1) denies the deferment granted by subsection (i) (§ 456(i)) to anyone who has previously received a II–S deferment "under the provisions of this paragraph" of the 1967 Act. Subsection (i) (2) grants a I–S student deferment until the end of the current academic year, or until the registrant ceases to satisfactorily pursue his college program, to a student who is ordered to report for induction.[4] There is a Selective Service Regulation [5] which states that a student who has received a

student deferment is not eligible to receive a I–S deferment. This regulation had been interpreted by the Selective Service System to deny the I–S deferment to any registrant who had received an undergraduate *or* graduate student deferment under the 1967 Act. When faced with this apparent conflict between the regulation and the statute, the courts, with only a few exceptions, have ruled that the regulation is invalid. *See, e. g.*, Nestor v. Hershey, 138 U.S. App.D.C. 73, 425 F.2d 504 (1969); Marsano v. Laird, 412 F.2d 65 (2d Cir. 1969); Crane v. Hershey, 410 F.2d 966 (1st Cir. 1969); Foley v. Hershey, 409 F.2d 827 (7th Cir. 1969); Lerner v. Hershey, 312 F.Supp. 99 (N.D.Ga.1970); Keller v. Hershey, 309 F.Supp. 687 (S. D.Fla.1969); Weppler v. Hershey, 308 F.Supp. 447 (N.D.Ill.1969); Kaplysh v. Allen, 303 F.Supp. 1007 (N.D.Ohio 1969); Carey v. Local Board No. 2, 297 F.Supp. 252 (D.Conn.1969), aff'd, 412 F.2d 71 (2d Cir. 1969). *But see* Rich v. Hershey, 408 F.2d 944 (10th Cir. 1969).

While these I–S cases support plaintiff's position that section 456(h) (1) does not prohibit him from receiving a III–A fatherhood deferment under section 456(h) (2), they do not control on the issue of the validity of Selective Service Regulation 1622.30(a). The III–A fatherhood and the I–S student deferments differ in one fundamental respect—the I–S deferment is mandatory while the III–A deferment is only directory. This difference is basic to the resolution of this case, and leads to the conclusion that Selective Service Regulation 1622.30 is valid and that plaintiff is not entitled to relief.

In Gregory v. Hershey, 311 F.Supp. 1 (E.D.Mich.1969), the court held, in a class action suit, that Regulation 1622.-30(a) was invalid because it conflicted

---

4. 50 App. U.S.C. § 456(i) (2):
   Any person who while satisfactorily pursuing a full-time course of instruction at a college, university, or similar institution is ordered to report for induction under this title, shall, upon the facts being presented to the local board, be deferred

   (A) until the end of such academic year, or (B) until he ceases satisfactorily to pursue such course of instruction, whichever is the earlier . . .

5. Selective Service Regulation 1622.15(b), 32 C.F.R. § 1622.15(b).

with the Act. On appeal, the United States Court of Appeals for the Sixth Circuit reversed. Gregory v. Tarr, 436 F.2d 513 (6th Cir. 1971). Prior to the Sixth Circuit decision in *Gregory*, two other district courts were faced with the same issue. In Whitmore v. Tarr, 318 F.Supp. 1279 (D.Neb.1970), the court granted relief to plaintiff who was admittedly a member of the class granted relief by the district court in *Gregory*. The court reached this result because it felt itself bound by the judgment of the district court in *Gregory*. In the course of its opinion, however, the court indicated that if it were free to decide the issue of the conflict between the statute and the regulation, it would reach a different conclusion from that reached in *Gregory*. 318 F.Supp. at 1283. It should also be pointed out that on appeal, the United States Court of Appeals for the Eighth Circuit reversed the judgment of the district court. Whitmore v. Tarr, 443 F.2d 1370 (8th Cir. 1971).

In a case decided eight days before the district court decision in *Whitmore*, the United States District Court for the Eastern District of Louisiana refused to follow the district court decision in *Gregory*, holding that Selective Service Regulation 1622.30 does not conflict with the express terms of the Act and that it is valid. Pasquier v. Tarr, 318 F.Supp. 1350(E.D.La.1970).[6] The rationale of the court was as follows:

> We are in complete agreement with the *Gregory* case that the proviso in 6(h) (1) prohibits the granting of III–A deferments only to persons who have received undergraduate student deferments since June 30, 1967. We therefore hold that the plaintiff is correct in his argument that he is not prohibited by the relevant language in 6(h) (1) from receiving a III–A classification. But does this automatically render Selective Service Regulation 1622.30(a) invalid? We think not. The fact that 6(h) (1) does not *pro-*

*hibit* the plaintiff from receiving a III–A classification does not mean that it *compels* the granting of such a deferment. It is on this point that the legal paths leading to the solutions of the I–S and III–A issues cease to run parallel to each other and begin to diverge. For a chief difference between the two deferments is that the I–S deferment is mandatory, while the III–A classification is only discretionary . . . . But the granting of a III–A deferment is made discretionary rather than mandatory by Section 6(h) (2), which says that the President is not compelled, but "authorized, under such rules and regulations as he may prescribe, to provide for" the granting of III–A deferments. Thus, by saying that the President "is authorized" to provide for the granting of III–A fatherhood deferments rather than stating that such classifications "shall" be granted, the statute specifically allows the Selective Service System to limit the granting of III–A fatherhood deferments by appropriate regulations. For this reason, it cannot be said that Selective Service Regulation 1622.30(a) conflicts with the express terms of the Selective Service Act, although this may well be true in the case of the regulation applicable to I–S deferments . . . .

318 F.Supp. at 1357–1358.

The Sixth Circuit decision in *Gregory* is in accord with *Pasquier*. The court in *Gregory* reasoned that:

> Thus, both the graduate student deferment and the fatherhood deferment are matters of Executive grace which can be made subject to any reasonable conditions, rather than matters of statutory right. The Executive has exercised its discretion to provide for both graduate deferments and fatherhood deferments, but has pre-conditioned the latter deferment on not having requested and received a grad-

6. The court in *Pasquier* held that it was not bound by the holding in *Gregory* be-    cause no notice was given to the absent members of the class in that case.

uate student deferment so as to preclude the "pyramiding" of deferments into complete exemption from military service.

436 F.2d at 516–517.

This court is in complete accord with the Sixth Circuit decision in *Gregory* and the district court decision in *Pasquier*. Section 456(h) (2) says that the President is "authorized, under such rules and regulations as he may prescribe, to provide for" the granting of III–A deferments. Section 456(i) (2), on the other hand, says that any person who is satisfactorily pursuing a full-time college program at the time he is ordered to report for induction *"shall,* upon the facts being presented to the local board, be deferred" with a I–S classification. (Emphasis added). *See* Marsano v. Laird, *supra*, 412 F.2d at 68. Thus, the statute allows the President to limit the granting of III–A fatherhood deferments by reasonable regulations while it does not allow such limitation of the I–S deferment. It cannot be said that the Selective Service System, in enacting Regulation 1622.30(a), has acted in a blatantly lawless manner. Therefore, the court holds that 50 App. U.S.C. § 460(b) (3) prevents this court from exercising jurisdiction in this case. Defendants' motion to dismiss is hereby granted.

## MEMORANDUM AND ORDER

Plaintiff Sandler has moved this court to alter or amend its judgment rendered July 27, 1971, dismissing his complaint. The judgment of dismissal followed a determination that jurisdiction was lacking in light of section 10(b) (3) of the Selective Service Act which bars pre-induction judicial review of classification by a local board unless, under the *Oestereich* and *Breen* decisions of the Supreme Court, discussed *infra,* the local board has acted in a "basically lawless" manner. This court determined that the III–A fatherhood deferment sought by the plaintiff is made directory, not mandatory, by the Act. Therefore, Selective Service Regulation 1622.30 is valid as an exercise of executive discretion. Since plaintiff's local board acted pursuant to that regulation, it acted lawfully and this court had no jurisdiction to entertain plaintiff's complaint. See this court's opinion, Sandler v. Tarr, Civil No. 71–60 N (July 27, 1971).

█ Plaintiff's present motion to amend is not based on a claim that the local board's failure to grant a III–A deferment in accordance with a *statutory* mandate was "basically lawless." Rather, plaintiff now claims that Local Board No. 34 was basically lawless in its failure to honor a *judicial* mandate, namely, the order issued by the United States District Court for the Eastern District of Michigan in the case of Gregory v. Hershey, 311 F.Supp. 1 (1969). In other words, plaintiff claims that the Michigan order had nationwide effect. As authority for this proposition plaintiff cites cases which hold that persons subject to an injunction are not free to disregard that injunction until it has been dissolved by orderly review. This court does not take issue with those cases. However, plaintiff's proposition is far removed from the authority he cites. He would have this court extend the law to include individuals outside the jurisdiction of the court issuing the order, where those individuals were absent from the litigation and were not made parties defendant.

Plaintiff relies on the case of Howat v. Kansas, 258 U.S. 181, 42 S.Ct. 277, 66 L.Ed. 550 (1922), and its progeny, to support his argument. The language of that opinion, however, would indicate otherwise:

An injunction duly issuing out of a court of general jurisdiction with equity powers, upon pleadings properly invoking its action, *and served upon persons made parties therein and within the jurisdiction, must be obeyed by them,* however erroneous the action of the court may be, even if the error be in the assumption of the validity of a seeming, but void law going to the merits of the case. *Id.,* at

189–190, 42 S.Ct. at 280 (emphasis supplied).

The requirements of being present and a named party are not incidental to the language or impact of the *Howat* case. To delete those requirements from the rule of law announced would drastically alter the effect of its holding. It would, for example, permit a single federal district judge to issue an order having nationwide effect on federal legislation, a result that would be disastrous. Federal statutory schemes would be subjected to continued chaos. The Michigan court rendered a decision based on its own interpretation of the Selective Service Act and pertinent regulations. This court does not feel bound by that interpretation.

The fact that the Michigan case involved a class action should not change the result. The overwhelming majority of case law and commentary on Rule 23, Federal Rules of Civil Procedure, concentrates exclusively on problems surrounding the composition of the plaintiff class. This court's research has uncovered no authoritative discussion of the composition of a defendant class. In particular, there is no guidance regarding res judicata of class action judgments on absent, non-party defendants. The Sixth Circuit was equally doubtful in its opinion reversing Gregory v. Hershey, *supra,* sub nom. Gregory v. Tarr, 436 F.2d 513 (6th Cir. 1971), where it observed:

> Defendants have not questioned the validity of the class action although no notice to the members of the class was given as provided by Rule 23, Fed.R.Civ.P., nor have they questioned the jurisdiction of the court over the State Directors of Selective Service, the Local Boards and their members

for the states of Indiana, Illinois and Minnesota.

Allowing class actions to be brought by Selective Service registrants to enjoin not only their own induction, but the induction of others similarly situated throughout the nation, can have a far-reaching and disruptive effect on the operation of the Selective Service System. *Id.,* at 514, n. 2.

In the private sector, the result plaintiff urges on this court would not be so troublesome. However, in the public sector where governmental agencies and statutory schemes might be disrupted, the judiciary must be more cautious. Deference must be paid to legislative intent attendant to the statute being construed. Section 10(b) (3) of the Act makes quite clear the intent of Congress that individual registrants should not be permitted to disrupt the operation of the Selective Service System via judicial challenge. Attacks on classification and processing have been expressly limited to defenses in criminal prosecutions. This is far removed from class actions seeking declaratory and injunctive relief.[1] When Congress authored § 10(b) (3), it could not have envisioned the Supreme Court holdings [2] which were forthcoming to carve a very narrow exception to the prohibition on pre-induction judicial review. Nor would the Congress, presumably, sanction the punitive reclassifications which occasioned the Supreme Court's holdings. However, there is no indication either from the Supreme Court or from Congress that the basic posture of § 10(b) (3) should be altered.

When the Supreme Court in *Oestereich* and *Breen* carved out the "basically lawless" exception to the judicial review prohibition of § 10(b) (3), it was deal-

---

1. Although the Michigan order in Gregory v. Hershey was not an injunction, it certainly had injunctive effect. The court ordered the defendants to award III–A fatherhood deferments to all members of the plaintiff class. In effect, this order enjoined the defendants from enforcing Selective Service Regulation 1622.30, 32 C.F.R. § 1622.30(a).

2. Oestereich v. Selective Service System Local Board No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968) and Breen v. Selective Service Local Board No. 16, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970).

ing with instances of punitive reclassification. Pre-induction review was thought to be appropriate where a local board had clearly departed from its statutory mandate. The refusal of Maryland Local Board No. 34 to accede to a court order issued in Michigan is not a departure from statutory mandate, especially where the efficacy, within Maryland, of the Michigan court order was and is in doubt. It is important to note at this point that in effect Local Board No. 34 did comply with the Michigan order since it withdrew plaintiff's induction order, thus deferring him from the draft temporarily.

While the national director of Selective Service may have been a party to the Michigan action, the Maryland Board was not. The former is not empowered to grant a III–A deferment to plaintiff in Maryland; the latter, in its discretion, is so empowered. This court cannot say that Maryland Local Board No. 34 was clearly bound by the Michigan decision. Therefore, it cannot have clearly departed from its statutory mandate and its action in refusing plaintiff's request for deferment was not "basically lawless." Thus this Court continues to be without jurisdiction to hear plaintiff's complaint and his motion to amend must be denied.

Even if the local board could be deemed to have acted in a basically lawless manner, plaintiff would succeed only in securing pre-induction judicial review of his classification. Were review justified, this Court could only find that plaintiff is not now entitled to a III–A fatherhood deferment. *See* Gregory v. Tarr, *supra,* cert. denied, 403 U.S. 922, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971); Whitmore v. Tarr, 443 F.2d 1370 (8th Cir. 1971); and Pasquier v. Tarr, 318 F.Supp. 1350 (E.D.La.1970). This motion would therefore seem to be an exercise in futility, for at best, plaintiff could only get into court long enough to have his case dismissed on the merits.

Furthermore, there remains a problem of the relief to which plaintiff might conceivably be entitled. Plaintiff was not inducted into military service during the life of the *Gregory v. Hershey* district court order. The question has now been rendered moot by the reversal of that decision and the denial of certiorari, *supra.* It is too late to doubt that this court has no jurisdiction to entertain moot questions. This court can see no grounds upon which a present claim for III–A deferment can be based. The deferment arguably may have been justified in the past, but it undoubtedly is not justified now. This court is not prepared to award, or reward, plaintiff with a III–A fatherhood deferment simply because his draft board may have blundered in the past, especially in light of the fact that the alleged blunder did not prejudice plaintiff who remained a civilian throughout the term of the Michigan order as well as these proceedings.

■ Plaintiff claims in this motion that he has been prejudiced by the Local Board's failure to reclassify him III–A because had the board done so as ordered by the Michigan court, the board would have reclassified him I–A *after* the Sixth Circuit reversed that order, and plaintiff would then have been entitled to challenge the reclassification anew as well as appeal the denial which was sure to follow. This, plaintiff argues, would have purchased additional time during which he could not be inducted into the service. While this court does not doubt the prejudice claimed, it does doubt the legal metaphysics upon which the claim is based. When the Sixth Circuit reversed the Eastern District of Michigan order of Gregory v. Hershey, the circuit court ruled that the district court had no jurisdiction to entertain the complaint. The circuit court remanded the case to the district court with orders to dismiss the complaint. This, of course, would dissolve the order that had been issued by the district court. But it also says that the district court never had jurisdiction of the case. An order issued without jurisdiction is null and void—it never existed. It is one thing to say that such

**622**

an order must be obeyed before it is dissolved. It is quite another thing to say that relief may now be based on the fact that the order had existed at an earlier time. This, in effect, is what plaintiff now requests when he asks that his classification be changed from its present I–A to the III–A deferment to which plaintiff is not entitled, so that the Local Board will be required to again reclassify plaintiff I–A at which time plaintiff can again commence the challenge and appeal machinery. This is nonsense. For such retrospective purposes, the Michigan court order never existed, and cannot now serve as the basis for such gymnastics.

For all of the above reasons, it is this 3rd day of November, 1971, by the United States District Court for the District of Maryland, ordered:

That plaintiff's motion to amend the judgment of this court be, and the same hereby is, denied.