Stephen L. GREGORY, James E. Hovis,
John B. Sharpless II, Richard J. Sil-
verman, Plaintiffs-Appellees,

v.

Curtis W. TARR, National Director of
Selective Service, et al., Defendants-
Appellants.

No. 20497.

United States Court of Appeals,
Sixth Circuit.

Jan. 26, 1971.

Reed Johnston, Jr., Atty., Dept. of Justice, Washington, D. C., for defendants-appellants; William D. Ruckelshaus, Asst. Atty. Gen., Morton Hollander, Atty., Dept. of Justice, Washington, D. C., James H. Brickley, U. S. Atty., Detroit, Mich., on brief.

Charles Donahue, Jr., Ann Arbor, Mich., for plaintiffs-appellees; James Lafferty, Marc Stickgold, Lafferty, Reosti, Jabara, Papakhian, James, Stickgold & Smith, Detroit, Mich., on brief.

Before WEICK, McCREE, and BROOKS, Circuit Judges.

WEICK, Circuit Judge.

Plaintiffs filed a class action in the District Court challenging the application and validity of a Selective Service Regulation defining eligibility of draft registrants for what is known as a "fatherhood deferment" under deferment classification III-A.[1] The plaintiffs are

---

1. Title 32, Code of Federal Regulations, section 1622.30 (January 1, 1970) provides, in pertinent part:

"(a) In Class III-A shall be placed any registrant who has a child or children with whom he maintains a bona

draft registrants who have been re-classified I–A (available for military service) and ordered to report for induction. The defendants are the National Director of Selective Service, the State Directors of Selective Service of the states of Michigan, Indiana, Illinois and Minnesota, and a number of local boards and their members in said states. The class sought to be protected is limited to Selective Service registrants who have one or more children with whom they maintain a bona fide family relationship in their homes, who are not physicians, dentists or veterinarians or in an allied specialist category, and who have a post-baccalaureate student deferment (graduate II–S), but have not received a pre-baccalaureate student deferment (undergraduate II–S), under authority of the Military Selective Service Act of 1967, 81 Stat. 100, 50 U.S.C.A. App. § 451 et seq. Plaintiffs seek a declaratory judgment that the challenged regulation is invalid, at least as it is presently applied, and a mandatory injunction ordering classification in Class III–A (fatherhood deferment) for themselves and the class they seek to protect. Plaintiffs also seek to have declared void the orders to report for induction which each of them has received. Jurisdiction is allegedly founded on 28 U.S.C.A. §§ 1331, 1343, 1361, & 2201, 2202.

The action was submitted to the court upon the plaintiffs' motion for summary judgment and the defendants' motion to dismiss for lack of subject-matter jurisdiction and, in the alternative, for failure to state a claim upon which relief could be granted. The court had previously determined, upon plaintiffs' motion, the validity of the class action. The district court filed an opinion granting the plaintiffs' motion for summary judgment in which it determined that it had subject-matter jurisdiction over the action and that plaintiffs had presented an issue on which they were entitled to relief.[2] Defendants appeal

fide family relationship in their [sic] home and who is not a physician, dentist or veterinarian, or who is not in an allied specialist category which may be announced by the Director of Selective Service after being advised by the Secretary of Defense that a special requisition under authority of section 1631.4 of these regulations will be issued by the delivery of registrants in such category, except that a registrant who is classified in Class II–S after the date of enactment of the Military Selective Service Act of 1967 shall not be eligible for classification in Class III–A under the provisions of this paragraph."
The fatherhood deferment provided by 32 C.F.R. § 1622.30(a) has been suspended by Executive Order 11,527 subsequent to the filing of the present case, but the order provides that those entitled to the deferment who requested it prior to the date of the Executive Order shall still be entitled to it thereafter. Exec. Order No. 11,527, 35 F.R. 6571, 6572 (April 23, 1970).

2. Defendants have not questioned the validity of the class action although no notice to the members of the class was given as provided by Rule 23, Fed.R.Civ.P., nor have they questioned the jurisdiction of the court over the State Directors of Selective Service, the Local Boards and their members for the states of Indiana, Illinois and Minnesota.
   Allowing class actions to be brought by Selective Service registrants to enjoin not only their own induction, but the induction of others similarly situated throughout the nation, can have a far-reaching and disruptive effect on the operation of the Selective Service System.
   In Whitmore v. Tarr, 318 F.Supp. 1279 (D.Neb. decided October 22, 1970), the court held that it was bound by the decision of the District Court in the present case on the ground of res adjudicata and enjoined the induction of a Nebraska registrant. In Germonprez v. Director of Selective Service, 318 F.Supp. 829 (D.D.C. decided July 8, 1970), the court issued a preliminary injunction restraining the induction of a Kansas registrant on the basis of the present case. Query: Suppose that the District Court in the present case had ruled that the plaintiffs and others similarly situated were not entitled to III–A classification. Would such a decision be binding on a registrant from another state who had no notice of the action nor opportunity to defend against it?
   In Pasquier v. Tarr, 318 F.Supp. 1350 (W.D.La., decided October 14, 1970), the court declined to follow the decision of the district court in the present case.

from that judgment, contending that the federal courts are deprived of jurisdiction of this case by virtue of section 10(b) (3) of the Military Selective Service Act of 1967 [hereinafter "the Act"], 50 U.S.C.A. App. § 460(b) (3), and that the plaintiffs were properly denied fatherhood deferments under the authority of section 6(h) (2) of the Act, 50 U.S.C.A. App. § 456(h) (2), and the pertinent regulation, 32 C.F.R. § 1622.30(a) (1970). We reverse.

In considering the 1967 Act, Congress was concerned about the decisions of some federal courts permitting earlier review of Selective Service decisions than had previously been thought permissible. Thus, Congress statutorily imposed the rule of judicial review which presently defines jurisdiction:

> "No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President except as a defense to a criminal prosecution [for refusing to report] after the registrant has responded either affirmatively or negatively to an order to report for induction, or for civilian work in the case of a registrant determined to be opposed to participation in war in any form: *Provided,* That such review shall go to the question of jurisdiction herein reserved to local boards, appeal boards, and the President only when there is no basis in fact for the classification assigned to such registrant." 50 U.S.C.A. App. § 460(b) (3) (1968).

As interpreted, the constitutionality of this provision has been upheld. Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968). It has long been recognized that Congress has a legitimate interest in protecting from litigious delays and interruptions a governmental activity so inextricably intertwined with national security as the procurement and training of military personnel. *See, e. g.* Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L. Ed. 305 (1944). In interpreting section 10(b) (3) of the Act, however, the Su-

preme Court has held that a literal interpretation of the provision was not justified, in Oestereich v. Selective Serv. Bd., 393 U.S. 233, 89 S.Ct. 414, 21 L. Ed.2d 402 (1968). A literal reading would, in the first instance, suspend the constitutionally protected writ of habeas corpus. 393 U.S. at 238, 89 S.Ct. 414. The Court also concluded that Congress did not intend to preclude pre-induction judicial review in the special circumstances presented by Oestereich and Breen v. Selective Serv. Bd., 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970).

In *Oestereich,* a divinity student who was unquestionably exempted by statute from eligibility for induction, was nonetheless reclassified I–A on the authority of the now-defunct delinquency regulations for having turned in his draft card in protest of the Vietnam War. Oestereich sought a permanent injunction prohibiting his induction. His complaint was dismissed by the district court for lack of jurisdiction under authority of section 10(b) (3), and the United States Court of Appeals for the Tenth Circuit affirmed. The Supreme Court reversed, holding that pre-induction review was not precluded where the action of the local board was "blatently lawless" and beyond its statutory authority. *Breen* reaffirms the principle of *Oestereich* where a registrant had a statutory deferment rather than a statutory exemption and the delinquency regulations were used to punish him for a draft card turn-in.

Contemporaneous with *Oestereich,* the Court announced its decision in Clark v. Gabriel, *supra,* holding that pre-induction judicial review was not available, except as a defense to a criminal prosecution, where the local board exercised, as contemplated by the statutory scheme, its judgment and discretion in granting or withholding certain categories of deferments. Plaintiffs seek to bring their allegations within the *Oestereich-Breen* exception to section 10(b) (3). In order to determine which line of decisions will control the present controversy, it is necessary to pierce the pleadings and de-

termine precisely what category is raised by the merits of this controversy. Stella v. Selective Service Board, 427 F. 2d 887, 889 (2nd Cir. 1970).

◼ The district court was of the opinion that it had jurisdiction since the question of whether the plaintiffs and the class they represent should be granted fatherhood deferments was not one committed to the discretion of the local boards and since no mixed question of law and fact or pure question of fact was presented to the Court for determination. The court then held that the regulation should be interpreted to refer only to undergraduate student deferments or, in the alternative, that the regulation was inconsistent with the Act. Having made this determination, the court upheld its jurisdiction since the action of the local boards was "basically lawless" under the proper view of the regulation and the Act. The plaintiffs support the district court's determinations by urging essentially two alternative grounds. They contend that, properly interpreted, the regulation denies fatherhood deferments only to those who have received *undergraduate* II–S deferment since the effective date of the Act. They offer two reasons for the suggested interpretation—that the ambiguity of the regulation should be construed to fit the explicit statutory denial of fatherhood deferments to those having obtained undergraduate deferments or that the regulation was promulgated by the President under a mistaken view that the law required deferments to be denied all registrants having obtained a student deferment, whether graduate or undergraduate. We can see no reason to accept the plaintiffs' invitation to interpret the regulation. It is plainly worded and appears in Title 32 immediately following the regulations regarding separate undergraduate and graduate student deferments, which were promulgated at the same time as the regulation in question. It is difficult to imagine, under these circumstances, how the Executive could have been unaware of the difference between undergraduate and graduate II–S deferment.

◼ However, the plaintiffs also contend that the regulation is invalid if given its literal meaning as inconsistent with the statutory scheme. This strikes closer to our view of *Oestereich*, that *only statutorily unauthorized actions* of the Selective Service are open to pre-induction judicial review except as a defense to a criminal prosecution. However, this case falls short of the mark. Under the new statutory scheme enacted in 1967, two new student deferment categories were created. Section 6(h) (1) of the Act provides that "the President *shall* * * * [defer] persons satisfactorily pursuing a full-time course of instruction at a college, university, or similar institution of learning * * *. A deferment granted to any person under authority of the preceding sentence *shall continue* until such person completes the requirements for his baccalaureate degree * * *." (emphasis added). However, the Act does not similarly create graduate or fatherhood deferments by its own force alone. Rather, in section 6(h) (2) of the Act, the President is *authorized* to provide for deferment of graduate students "under such rules and regulations as he may prescribe * * *." The same paragraph further provides that:

> " * * * [T]he President is also authorized, under such rules and regulations as he may prescribe, to provide for the deferment * * * of any or all categories of persons who have children, or wives and children, with whom they maintain a bona fide family relationship in their homes." (Emphasis added).

Thus, both the graduate student deferment and the fatherhood deferment are matters of Executive grace which can be made subject to any reasonable conditions, rather than matters of statutory right. The Executive has exercised its discretion to provide for both graduate deferments and fatherhood deferments, but has pre-conditioned the latter defer-

ment on not having requested and received a graduate student deferment so as to preclude the "pyramiding" of deferments into complete exemption from military service. Clearly, the exercise of this discretion expressly bestowed upon it by Congress does not involve the Executive or the Selective Service System in conduct unauthorized by statute, as was envisioned by the Court in the *Oestereich* decision. To the contrary, *Oestereich* presented a situation where the Selective Service System attempted to exercise punitive powers which Congress had not given it, having already prescribed a set of criminal penalties for violation of the Act. Here, the Act expressly bestows upon the Executive the discretion the exercise of which is challenged.

The judgment of the district court is reversed, and the cause is remanded with instructions to dismiss the complaint.

Reversed.