James F. PLOTNER, Jr., Sp. 4, United States Army, Petitioner-Appellee,

v.

Stanley R. RESOR, Secretary of the Army, and John C. F. Tillson, III, Commanding General, Fort Gordon, Georgia, Respondents-Appellants.

No. 31030.

United States Court of Appeals, Fifth Circuit.

June 29, 1971.

R. Jackson B. Smith, Jr., U. S. Atty., William T. Morton, Barnee C. Baxter, Jr., Asst. U. S. Attys., Augusta, Ga., for appellants.

Peter E. Rindskopf, Howard Moore, Jr., Atlanta, Ga., John H. Ruffin, Jr., Augusta, Ga., for appellee.

Before TUTTLE, WISDOM and INGRAHAM, Circuit Judges.

TUTTLE, Circuit Judge:

Appellee, James Plotner, was granted a writ of habeas corpus releasing him from service in the U. S. Army. Appellants argue he was not entitled to the deferment he sought and, therefore, had been legally inducted. We disagree and affirm, in part, the judgment of the trial court, but remand for the resolution of a factual issue.

Plotner graduated from Bridgewater State College in June of 1967. He completed his undergraduate work under a II–S deferment obtained pursuant to the Selective Service Act of 1951. In September, 1967 he entered Clark College as a graduate student and was granted another II–S deferment, but under the Selective Service Act of 1967. In June, 1968, he received his M.A. degree.

On June 22, 1968, Plotner was married. Early in August he learned that his wife was pregnant. It is, however, disputed as to whether he informed the Clerk of his local board of this fact. Plotner claims that he did this on August 5th and that the Clerk stated he could not receive a II–A deferment. The Clerk, however, by deposition, de-

nies ever talking with Plotner about this. In any event, Plotner filed no formal deferment request. On October 15th, he was ordered to report for induction but a week later he did file a statement with the Board to the effect that Mrs. Plotner was an obstetrical patient and that the anticipated delivery date was March 24, 1969. On November 22, 1968, Plotner was inducted into the Army.

After talking with a lawyer about other matters, Plotner discovered that an error might have been made in the information given him by the draft board Clerk. He then requested a discharge, which was denied by the Army on April 7, 1970. He brought a habeas corpus action, and was ordered released after serving more than twenty months.

Although we agree with the trial court that he was entitled to the III–A fatherhood deferment he sought, we feel we must remand this case to determine whether he had notified the board that his wife was pregnant, because of the holding by this Court in the recent case of United States v. Taylor, 5 Cir., 1971, 448 F.2d 349.

■ Assuming that the court finds that he had notified the board, the fact that the Clerk informed him that he was not entitled to the deferment is enough, we feel, to justify his dropping of the matter and, in effect, failing to exhaust his administrative remedies.[1] Draft law is extremely complex and full of traps for the unwary. Nevertheless, the Selective Service System has never been viewed as an adversary proceeding. Indeed, presence of counsel at draft board hearings is not allowed, and in general, a *parens patriae* approach is followed,

see, e. g., United States v. Sobczak, 264 F.Supp. 752 (N.D.Ga.); United States v. Bryan, 263 F.Supp. 895 (N.D.Ga.); United States v. Foster, 439 F.2d 29, 1971, (9th Cir.). In light of this approach, it seems only fair that a registrant not be held to a high level of precision in making his claims. Surely, if one is advised by the Clerk of the Board that it is impossible to obtain the deferment he requests, because of her misunderstanding of the law, as discussed below, the fact he then lets the matter drop by not making a written claim, or appealing, is most understandable. Though the Clerk is supposed to refer all such matters to the Board, an opinion expressed by her is no doubt often treated as authoritative by an uninformed registrant. In this case, there is nothing in the record that would indicate that his failure to exhaust administrative remedies was due to anything but the misinformation of the Clerk. Under these circumstances, the fact that he raises his first formal claim at a later date, after induction, does not waive his right to the deferment.

■ Assuming appellee did discuss the matter with the Clerk of the Board, we feel he was entitled to a III–A deferment. In George A. Hurt v. Local Board, No. 197, (No. 18,076, Feb. 3, 1970, 3rd Cir.), the Third Circuit, Court of Appeals, sitting en banc in holding that *preinduction review was proper* in a particular case, in effect decided that a student who received a II–S deferment under the 1967 Selective Service Act to finish one year of graduate school, was not barred from receiving a III–A fatherhood deferment. That Court found that the local board involved "acted sole-

---

1. We feel this case differs from the decision in United States v. Taylor, *supra*, where the court noted that when the registrant asked for information as to the interpretation of a certain regulation, "Mrs. Duncan replied that such a question must by answered by the Board." (448 F.2d p. 350). The clerk also advised him to fill out the necessary forms for the deferment he sought. Here, if Plotner's view is correct, he was simply told his efforts would be futile. According to his testimony, he did what appeared to be necessary to obtain his deferment. As stated by the trial court "The doctrine of exhaustion of remedies is as related to the draft laws no Procrustean bed."

ly on the *mistaken legal ground* that any II–S classification received after July 1, 1967, even one based on a post-baccalaureate student status, prevented a III–A fatherhood classification." Though the court split on whether or not to remand to determine if there were any other reasons for the Board's actions, the entire court, including two dissenting judges, recognized that a student who received a II–S deferment for his post baccalaureate work was not to be deprived of his right to a III–A fatherhood deferment. Although it must be noted that the district court case upon which Judge Lawrence based his opinion in the case at bar has since been reversed by the Court of Appeals for the Sixth Circuit, Gregory v. Tarr, 436 F.2d 513 (1971), we feel that the Third Circuit's approach is the better view.

We feel that this is the correct view for the reasons so ably stated by Judge Lawrence; that is, that there was no statutory authority for that part of 32 CFR § 1622.30 which denied to those persons having received a discretionary *graduate* II–S deferment the right to a III–A (fatherhood) deferment. The trial court equated the regulation 1622.30 banning any fatherhood deferments for anyone who had received a II–S deferment with regulations 1622.15(b) which provided that " * * * no registrant shall be placed in class I–S * * * who has been deferred as a student in class II–S and has received his baccalaureate degree." The Government had attempted to utilize this regulation to deny graduate students the right to a I–S deferment, because they had been given II–S deferments and because they had obtained baccalaureate degrees.

The courts, with practical unanimity had held that the statutory deferment, mandated by § 456(i), for the finishing of the current year of study by the

granting of a I–S deferment could not be abrogated by a regulation saying it should not be given if the registrant had previously held a II–S and obtained a baccalaureate degree, see Crane v. Hershey, 1st Cir. 1969, 410 F.2d 966; Bowen v. Hershey, 410 F.2d 962 (1st Cir. 1969); Carey v. Local Board No. 2, 412 F.2d 71 (2nd Cir. 1969); Foley v. Hershey, 409 F.2d 827 (7th Cir. 1969); Nestor v. Hershey, 138 U.S.App.D.C. 73, 425 F.2d 504 (1969); Fine v. McGuire, 139 U.S.App.D.C. 341, 433 F.2d 499 (1970).

Thus, although the regulations (1622.-15(b)) undertook to deny a I–S deferment to *any* registrant who had previously held a II–S deferment, the courts restricted the regulation to that class of registrants who had received an *undergraduate* II–S as mandated by § 456(h) (1) of the 1967 act. This result was reached because the 1967 act containing an express limitation on subsequent I–S deferments speaks in terms of a "person who has received a student deferment *under the provisions of this paragraph."* [2]

The graduate II–S deferments such as that held by Plotner, and by the registrants in the above cited cases were not granted under "this paragraph" [456(h) (1)]. That held by Plotner was granted under 456(h) (2). Those granted the I–A registrants had been granted under subsection (i) as distinguished from (h) (1) or (2). The granting of graduate II–S deferments was accomplished by virtue of the following language:

"The President is authorized, under such rules and regulations as he may prescribe, * * * to provide for the deferment * * * of any or all categories of * * * " graduate students.

---

2. No person who has received a student deferment under the provisions of this paragraph shall thereafter be granted a deferment under this subsection [this would include a fatherhood deferment], nor shall any such person be granted a deferment under subsection (i) of this section if he has received a baccalaureate degree. * * * " (Emphasis added.)

The same paragraph further provides that:

"The President is also authorized, under such rules and regulations as he may prescribe, to provide for the deferment * * * of any or all categories of persons who have children, or wives and children * * *."

The trial court held that the *authorization* given to the President to grant fatherhood deferments was not so qualified by the authorization to make regulations under which the Selective Service would operate as to *deny* completely the fatherhood deferment to those whom the statute gave him the power to defer.

Our conclusion that this is the correct view is bolstered by the fact that the statute expressly provides, both as to the discretionary grant of graduate deferments and as to the discretionary grant of fatherhood deferments, that such deferment shall be solely on the basis of the registrant's individual status.[3] The absence of any provision in subsection (h) (2) like that in (h) (1) that "no person who has received a student deferment under the provisions of this paragraph shall thereafter be granted a deferment under this subsection [including fatherhood deferment]" seems to indicate that Congress did not intend to authorize any such blanket prohibition against fatherhood deferments by regulations to implement the law authorizing the President to provide for graduate deferments.

This is the construction placed upon the statute by the district court in this case and by the Court of Appeals of the Third Circuit in George A. Hurt v. Local Board (*supra*). As we analyze the Gregory case by the Sixth Circuit, it is apparent that the decision there turned on the jurisdiction of the district court

to grant a pre-induction court hearing. Its refusal to do so has been cited by this court with approval in Pasquier v. Tarr (5th Cir.) 444 F.2d 116, dec. June 4, 1971. This court did not, therefore, reach the question here posed by Plotner who was inducted and who has served twenty months.

In sum, we conclude that the effort of the Selective Service System to deny by regulation a fatherhood deferment to all registrants given a discretionary II–S graduate deferment is not authorized, and, if timely requested, the claim for a fatherhood deferment must be considered by the board.

There remains the unresolved question whether the claim was timely filed. Since the trial court did not resolve the question whether Plotner was told by the clerk that he could not claim such a deferment,[4] the case must be remanded to the trial court for that purpose.

Upon remand the trial court should also, if it otherwise holds against Plotner's version of the matter, inquire into Plotner's legal status vis a vis further active duty in light of his having received a "discharge" from the Army. It is not clear from the record before us whether there is a question of mootness in light of the running of time following Plotner's induction.

Affirmed in part and remanded for further proceedings consistent with this opinion.

WISDOM, Circuit Judge (dissenting):

The district court held that 32 C.F.R. § 1622.30, which denied eligibility for a III–A deferment to recipients of graduate study deferments, went beyond the authority granted to the President by statute. In reaching this decision, the

---

3. As to graduate deferment: "Provided that no person within any such category shall be deferred except upon the basis of his individual status" § 456(h) (2).

   As to fatherhood: "No deferment * * shall be made in the case of any individual

except upon the status of such *individual*" § 456(h) (2).

4. It is clear from the record that even if the court should conclude that the clerk did not so advise Plotner, nevertheless she would have done so, if he had made the inquiry.

district court relied heavily on Gregory v. Hershey, E.D.Mich.1969, 311 F.Supp. 1. That case has since been reversed. Gregory v. Tarr, 6 Cir. 1971, 436 F.2d 513.

In Gregory v. Tarr, the Sixth Circuit determined that the availability of pre-induction judicial review depended on whether the regulation was inconsistent with the statute. Thus the question of availability of judicial review hinged on the issue which determines the merits of this case. For this reason, the decision of this Circuit in Pasquier v. Tarr, 5 Cir. 1971, 444 F.2d 116, which adopts the position of Gregory v. Tarr, is pertinent here.

The decision of the Sixth Circuit seems to me to be reasonable. Section 4(a) of the draft act authorizes the induction of persons into the Armed Forces by the President. The Act also authorizes the granting of various deferments. These deferments fall into two types:

(1) statutorily mandatory deferments, such as Sections 6(h) (1) (" * * * the President *shall* * * * provide for the deferment * * * of persons satisfactorily pursuing a full-time course of instruction * * * and who request such deferment * * *; and 6(i) (2) ("Any person who is satisfactorily pursuing a full-time course of instruction * * * *shall*, upon the facts being presented to his local board, be deferred. * * * "); in these cases a registrant is directly granted a deferment by Congress if he takes certain prescribed actions;

(2) statutorily discretionary deferments such as Section 6(h) (2) ("* * * the President is *authorized* * * * to provide for the deferment * * * of any or all categories of persons * * * whose activity in graduate study * * * is found to be necessary to the maintenance of the national health, safety or interest * *" and "* * * the President *is also authorized* * * * to provide for the deferment * * * of any or all categories of persons who have * * * wives and children * * *" ; these deferments are dependent on the guidelines established by the President.

The deferment claimed in this case is of the discretionary type. The appellants' argument is that because Congress explicitly prohibited those receiving undergraduate (statutorily mandatory) deferments from later receiving fatherhood deferments it implicitly negatively required that if the President established any fatherhood deferments at all, he must not prohibit them to those who have received graduate study deferments.

This negative-inference argument is unpersuasive. The statute authorized the President to withhold fatherhood deferments from those who had previously received graduate study deferments. This interpretation is reasonable in light of Congressional concern with the pyramiding of deferments.

I agree with the reasoning of the Sixth Circuit:

* * * [T]he Act does not * * * create a graduate or fatherhood deferment by its own force alone. Rather, in section 6(h) (2) of the Act, the President *is authorized* to provide for the deferment of graduate students "under such rules and regulations as he may prescribe * * *" The same paragraph further provides that: "* * * [T]he President is also authorized, under such rules and regulations as he may prescribe, to provide for the deferment * * * of any or all categories of persons who have children, or wives and children, with whom they maintain a bona fide family relationship in their homes." (Emphasis added.) Thus both the graduate student deferment

 

and the fatherhood deferment are matters of Executive grace which can be made subject to any reasonable conditions, rather than matters of statutory right. The Executive has exercised its discretion to provide for both graduate deferments and fatherhood deferments, but has pre-conditioned the latter deferment on not having requested and received a graduate student deferment so as to preclude the "pyramiding" of deferments into complete exemption form military service. Clearly, the exercise of this discretion, expressly bestowed upon it by Congress does not involve the Executive or the Selective Service System in conduct unauthorized by statute * * *. 436 F.2d at 516-517.

The district court relied on cases involving the availability of I–S deferments for those who have had graduate study deferments. Those cases are distinguishable. The I–S deferment is a statutorily mandatory deferment; the statutory section creating it did not exclude those who had received graduate study deferments. The courts there were dealing with an ambiguous statute. Here the statute grants the President authority to create fatherhood deferments and to limit their availability "to any and all categories of persons". Also the I–S deferment simply allows a student to complete an academic year before induction. This is far different from a III–A fatherhood deferment, which allows an individual to pyramid deferments in order to completely escape induction. Such pyramiding is exactly what Congress was trying to end.

Hunt v. Local Board No. 197, 3 Cir. 1971, 438 F.2d 1128 is unpersuasive. The opinions of the Judges in *Hunt* did not discuss the merits of the validity of the regulation. They cited the district court opinion in Gregory v. Hershey; they did not take into consideration Gregory v. Tarr.

With all due respect to my colleagues, it seems to me that it is inconsistent with the legislative purpose to hold that this regulation was prohibited by the statute. Congress intended to end pyramiding of deferments. Since Congress statutorily assured an undergraduate study deferment it was appropriate to include an explicit prohibition of fatherhood deferments for those who had received undergraduate deferments. Congress did not statutorily create graduate or fatherhood deferments. It left the creation and limitation of these deferments up to the President. Since Congress did not create the deferments, it was natural that Congress did not describe the relationship between them. I cannot agree that this legislative silence, when coupled with Congress' explicit prohibition on granting fatherhood deferments to those with undergraduate study deferments, *required* the President to allow those who had received graduate study deferments to be eligible for any fatherhood deferments he created. The explicit discretion delegated to the President to define those eligible for any fatherhood deferment militates against any finding of such an implicit, negative pregnant.

I respectfully dissent.